UNIVERSAL FILM MFG. CO. v. COPPERMAN et al.

(District Court, S. D. New York. March, 1914.)

**1.** COPYRIGHTS (§ 29*)—PROCEEDINGS TO OBTAIN—PUBLICATION.

Under Act March 4, 1909, c. 320, § 9, 35 Stat. 1077 (U. S. Comp. St. Supp. 1911, p. 1475), providing that any person entitled thereto may secure a copyright for his work by publication thereof with the notice of copyright required by that act, publication with notice of copyright is the essence of compliance with the statute, and publication without such notice amounts to a dedication to the public sufficient to defeat all subsequent efforts at copyright protection.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 29, 30; Dec. Dig. § 29.*]

**2.** COPYRIGHTS (§ 29*)—PROCEEDINGS TO OBTAIN—PUBLICATION.

Under Act March 4, 1909, c. 320, § 9, 35 Stat. 1077 (U. S. Comp. St. Supp. 1911, p. 1475), relative to copyright by publication with notice of copyright, and section 11 providing that copyright may also be had of the works of an author of which copies are not reproduced for sale, by the deposit with claim of copyright, in the case of a motion picture photo play, of a title and description, with one print taken from each scene or act, etc., articles, whether enumerated in section 11 or not, can only be protected by publication with notice of copyright, and publication before the copyright is registered invalidates the copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 29, 30; Dec. Dig. § 29.*]

**3.** COPYRIGHTS (§ 40*)—"PUBLICATION" BEFORE OBTAINING COPYRIGHT.

Where, before a photo play was copyrighted in the United States, photographic prints, films, or reels were sold in Great Britain and Europe, with knowledge that the play would be performed or the films shown, though each purchaser agreed not to use them out of his own country and not to sell for export, there was such a publication as prevented a valid copyright, since such a dissemination of a thing among the public as justifies the belief that it took place, with the intention of rendering the work common property, constitutes a "publication."

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 35; Dec. Dig. § 40.*

For other definitions, see Words and Phrases, vol. 6, pp. 5841–5846.]

**4.** COPYRIGHTS (§ 40*)—SUBJECTS OF COPYRIGHT—WORKS OF WHICH COPIES ARE NOT REPRODUCED FOR SALE.

Assuming that Act March 4, 1909, c. 320, § 11, 35 Stat. 1078 (U. S. Comp. St. Supp. 1911, p. 1475), relative to copyright of works of an author of which copies are not reproduced for sale, creates a different kind of copyright from that covered by section 9, relative to securing a copyright by publication with notice of the copyright, where photographic prints, films, or reels of a motion picture photo play were sold, there was such a reproduction of copies for sale as rendered the copyright under section 11 void.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 35; Dec. Dig. § 40.*]

In Equity. Suit by the Universal Film Manufacturing Company against S. Copperman and others on a copyright of a motion picture photo play. On final hearing. Action dismissed.

See, also, 206 Fed. 69.

Isaac B. Owens, of New York City, for complainant.

Samuel F. Frank, of New York City, for defendants.

HOUGH, District Judge. Prior to September, 1912, the Nordisk Films Company manufactured or created a motion picture photo play known as "The Great Circus Catastrophe." The photographs on the film tell a story which was originally shown by human actors who played their parts before a camera, so that the photo play (i. e., the story told by the photographs successively shown to the audience) is a pantomime drama. The Nordisk Company is a Danish corporation; this work was done in Denmark. In that and other countries of Europe it was in 1912 lawful to copyright photo plays, but no copyright was sought. Before September 7, 1912, the Nordisk Company advertised and sold this photo play "for release on September 7th." This means that they sold photographic prints, films, or reels from the original negative wherever they could, with the agreement, however, that no public exhibition should be had until September 7th. Purchasers of this photo play further agreed that it should not be exported or sold for export to any other country; that is to say, the right of presenting the drama or showing the pantomime was limited to the country wherein the sale took place. On November 14, 1912, the photo play was copyrighted in the United States, but in the preceding September one of the films was bought by one of the defendants in England without any knowledge of the restriction on its use inserted in the contract of sale between the Nordisk Company and the first purchaser. This film was brought to the United States and exhibited before copyright registration. The point for decision is whether this copyright is valid.

[1] Prior to the present copyright statute (March 4, 1909) the lawful method of obtaining copyright was laid down in Rev. Stat. § 4956 (U. S. Comp. St. 1901, p. 3407), as amended from time to time. That section prescribed what had to be done, not only in regard to copyrighting books and the like, but also such things as photographs, drawings, etc. Section 9 of the act of 1909 carries forward substantially the historic method of obtaining copyright and corresponds to Rev. Stat. § 4956, when it says:

"Any person entitled thereto by this act may secure copyright for his work by publication thereof with the notice of copyright required by this act."

Around this method of procuring copyright has grown a great body of case law, the sum of which is that publication with notice of copyright is the essence of compliance with the statute, and publication without such notice amounts to a dedication to the public sufficient to defeat all subsequent efforts at copyright protection.

[2] It is here argued that the act of 1909 disturbed this theory of copyright and introduced another and new kind of copyright. This argument rests on the existence of section 11, which as originally passed in 1909, read as follows:

"Copyright may also be had of the works of an author of which copies are not reproduced for sale, by the deposit, with claim of copyright, of one complete copy of such work, if it be a lecture or similar production, or a dramatic or musical composition; of a photographic print if the work be a photograph; or of a photograph or other identifying reproduction thereof if it be a work of art or a plastic work or drawing."

The argument is that this section relates only to something "of which copies are not reproduced for sale," so that lectures, dramatic compositions, photographs, works of art, plastic works, and drawings may be copyrighted in two ways, and the proper way will depend upon whether copies thereof are or are not "reproduced for sale." If copies are reproduced for sale, then section 9 applies, and, if they are not, then section 11. So far as photo plays are concerned, they are brought within the purview of copyright by the amendment of 1912 (Act Aug. 24, 1912, c. 356, 37 Stat. 488). By that amendatory act motion picture photo plays are inserted in the classification section, No. 5. If this were the only reference to photo plays, they would clearly be copyrighted in the method or manner prescribed by section 9; i. e., "by publication thereof with notice of copyright." But in section 11 was also inserted (after the provision regarding lectures and before that concerning photographs) the following words:

"Of a title and description, with one print taken from each scene or act, if the work be a motion picture photo play."

It is said that the effect of this amendment is to add to the list of things that may be copyrighted without any reference to publication, so that under section 11, as it now stands, a photo play may be copyrighted without publication, and it may also be copyrighted after publication. I am not prepared to admit that section 11 has any such meaning. It is not believed that the phrase, "works of an author, of which copies are not reproduced for sale," was intended to modify any other nouns except "lecture," "dramatic composition," and "musical composition." To speak of a photograph as the work of an author of which copies are not reproduced for sale is absurd. But, in order to maintain the argument as to two kinds of copyright, it must be asserted that a photograph or a drawing or a work of art or a motion picture or a photo play may be copyrighted at any time without reference to the use made of it, provided only that "copies are not reproduced for sale." In my opinion it is still true that all the articles enumerated in section 11 can only be protected on publication by affixing the notice of copyright required by this act, so that, no matter whether an article be enumerated in section 11 or not, the inquiry is still important, when it was published, and, if it was published before copyright registered, then the copyright sought is invalidated.

[3] What amounts to publication varies, of course, with the nature of the thing published; i. e., the publication of a book is naturally different from the publication of a picture. The statute does not undertake to describe what publication is, so that we must fall back upon the long line of decisions originally referred to. Werckmeister v. Am. Lithographic Co., 134 Fed. 321, 69 C. C. A. 553, 68 L. R. A. 591, and cases there cited sufficiently guide one toward an understanding of publication in any given instance. If there be such a dissemination of the thing under consideration among the public as to justify the belief that it took place with the intention of rendering the work common property, then publication occurred. I do not see what more the Nordisk Company could have done toward disseminating its work than to sell it everywhere in Great Britain and Europe with knowl-

edge that the play would be performed or the films shown over most of the civilized world. I do not think it makes any difference that each purchaser agreed not to use out of his own country or to sell for export; it is proven that more than a month before registration in the United States there was nothing to prevent anybody in any part of Europe from buying, using, and seeing this photo play. How publication could be plainer I do not perceive. And I should be of this opinion if no copy had ever come to the United States prior to November 14, 1912. Any discussion of the restriction clause in the Nordisk Company's contract is unimportant.

Because, therefore, there was a publication in Europe before registration in the United States, this bill must be dismissed.

[4] It is, of course, true that, if there be anything in the contention that section 11 creates another and different kind of copyright from that referred to in section 9, then what took place in Europe amounted to a reproduction of copies for sale, thereby rendering the copyright void, but for a different reason. The dismissal will carry costs.