**BASEVI v. EDWARD O'TOOLE CO., Inc.**

District Court, S. D. New York.
Jan. 6, 1939.

As Amended Jan. 17, 1939.

Frank, Weil & Strouse, of New York City (Samuel F. Frank, of New York City, of counsel), for plaintiff.

Morgan, Finnegan & Durham, of New York City (George B. Finnegan, Jr., and Hobart N. Durham, both of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

My judgment is for the defendant herein, and it may have a decree dismissing the complaint, with full costs which will include all taxable disbursements, but will not include any attorney's fee.

I. My subject matter jurisdiction is based on the Copyright Act, 17 U.S.C.A. § 1 et seq.

II. In view of the decision of the United States Supreme Court on April 25, 1938, in Interstate Circuit, Inc., et al. v. United States, 304 U.S. 55, 56, 57, 58 S.Ct. 768, 82 L.Ed. 1146, it is now a work of supererogation to write a considered opinion on the facts in an equity cause, for its place will be taken by formal findings of fact and conclusions of law, separately stated, under Rules of Civil Procedure, 28 U.S.C.A. following section 723, Rule 52 (a), formerly Equity Rule 70½, Title 28 United States Code, Section 723.

I shall, therefore, deal with the facts in this opinion only to the extent necessary to make clear my views on the questions of law involved.

III. A motion was made before Judge Bondy to dismiss the amended complaint which incorporated the three copyrighted catalogues by reference. On such a motion, of course, the relevant facts alleged in the complaint were pro hac vice admitted.

Judge Bondy denied this motion and held, 26 F.Supp. 39:

1. That plaintiff's catalogues were "books" within the meaning of the Copyright Act, that they had sufficient originality to be copyrightable as "books", that they were copyrighted as such, and, that, by necessary implication, the artistic concept of the illustrations therein, if published with proper notice, were protected as component parts of the "books".

2. That there is no "text" to the catalogues in any proper sense, and, hence, that it was not necessary,—to constitute a cause of action—to allege anything as to where any printed matter therein was printed, or as to where the illustrations were made and the catalogues were bound.

3. That infringement was sufficiently alleged by claiming exact reproductions of certain of the illustrations of paintings contained in the catalogues.

Judge Bondy's order which thus supported the amended complaint should not be disturbed by a coordinate judge, cf. Potts v. Village of Haverstraw, 2 Cir., 93 F.2d 506, 509, and his decision, therefore, fixed the law of the case for me as to the validity of the copyright and the infringement thereof, unless, on the trial, the facts shown were different from the facts alleged in the complaint and admitted by implication on the motion to dismiss. United States v. Davis, D.C., 3 F.Supp. 97, 98, 99.

I think, however, that the facts shown on the trial are in most respects materially different from the facts implicit on the motion to dismiss, and, under the proverbial principle that circumstances alter cases, I find myself, except as to his holding that the catalogues did not have to be printed and bound in the United States, freed from the authority of Judge Bondy's decision.

IV. In view of Judge Bondy's decision, however, and of the provisions of Section 15 of the Copyright Act, 17 U.S.C.A. § 15, it is now admittedly common ground —and, if it were not agreed, I should so hold on the facts now before me—that, as there was not any copyrightable printing involved in the catalogues and as the illustrations therein produced are of paintings located in a foreign country, it was not necessary to have the printing of the catalogues done in the United States as a prerequisite to securing a copyright thereof here.

V. On November 17, 1938, the defendant made a motion to amend its answer to conform to the proofs by the addition of several paragraphs thereto. This motion was not contested by the plaintiff and I ordered the amendments filed.

I am treating this amendment,—as, indeed, it was, I presume, intended to be treated—as a pleading, in part at least, of supplemental defenses to meet some situations which have arisen since this suit was commenced.

A supplementary pleading should, as here, always be filed to form the foundation—whether by way of attack or defense—for relief in respect of any matter

which has arisen after suit is commenced. Cf. Hazeltine Corporation v. Radio Corporation, D.C., 20 F.Supp. 668, 674.

An injunction governs the relations of the parties in the future. If, in view of the amended answer and the proofs to which it was allowed to conform, it is clear that an injunction should not issue in this case, it matters not that the reason. for refusing the issuance thereof is based, partly at least, on facts occurring after the suit began. Although the new Rules of Civil Procedure, 28 U.S.C.A. following section 723c, have, I believe, not been applied as yet to copyright causes—see Rule 81—I think, nevertheless, that the attitude I am taking towards the pleadings herein is justified on general equitable principles, and certainly would be specifically in accordance with those Rules if they had now been made applicable herein. E. g., Rules of Civil Procedure, No. 8(f) and No. 15(b) and (c).

VI. The claim in respect of Picture No. 858 has been—quite appropriately—withdrawn, as there was undoubtedly publication, both in this country and abroad, before any statutory steps to copyright that picture here were taken.

Such an informal method of withdrawing one branch of a claim like this could be passed without further notice, if it were not for the fact that a status—namely, a copyright monopoly—is involved.

Consequently, whilst I very much appreciate the attitude of counsel for the plaintiff in withdrawing No. 858 from consideration and relieving me from dealing with that part of this cause, I cannot allow an informal withdrawal of a copyright claim. Cf. Lewis Invisible Stitch Machine Co. v. Columbia Blind Machine Mfg. Co., D.C., 22 F.Supp. 705.

I hold that the copyright was invalid in respect of No. 858 by reason of previous publication in the United States and abroad, without the required statutory notice of United States copyright, and that the status of that picture must be definitely disposed of herein in order that there shall not be any claim for copyright thereof hanging as a threat over the trade involving these religious pictures.

Consequently, there must be a formal judgment dismissing the complaint in respect of Picture No. 858.

VII. The crucial questions which emerge from the facts proved in this cause are—

1. Whether the copyrights of the catalogues were void ab initio in respect of some of the photographs portrayed therein by reason of—

(a) Prior publication in Italy of reproductions of those photographs without any United States copyright notice on them, or

(b) The fact that in respect of two of the catalogues, the copyright applications and the resultant certificates were false, because the time of publication for United States copyright purposes was antedated therein.

2. Whether, if any of the copyrights were valid, they were lost by reason—

(a) Of failure of copyright markings on individual photographs or reproductions, or

(b) Of the insufficiency of such markings, or

3. If not, whether, for the reasons in 2(a) and 2(b) the defendant was, in respect of some of the photographs, an innocent infringer within the meaning of Section 20 of the Copyright Act. 17 U.S.C.A. § 20.

VIII. All the plaintiff's difficulties involved in this somewhat complicated case arise, in my opinion, from the fact that he did not follow what would have been the normal procedure, and copyright in the United States as works of art the reproductions of the paintings which had been made for him in Italy. But, instead, apparently for reasons of economy—as his amazing correspondence with Riccamboni shows—he tried to put a blanket copyright on the artistic conception of all six paintings here involved by copyrighting catalogues containing reproductions of them.

The chronology involved in the situation necessarily must have been, and I find it was, this:

First, a painting of each subject was made;

Second, a photographic reproduction of the painting was made; and

Third, there was made a reproduction in the catalogue by rotogravure or similar process of this photographic reproduction.

The religious picture trade deals in photographs,—sometimes made direct from a painting and sometimes from other photo-

graphs, and in other forms of reproductions,—sometimes colored and sometimes not—embodying the artistic conception of paintings.

In view of the fact that the United States is not a member of what is called the Berne International Copyright Union, it is required, to secure a copyright here, that any publication in a foreign country must contain a notice of United States copyright.

There obviously arises, in such a procedure as is above outlined, many opportunities by which the artistic conception embodied in the paintings or photographs involved thereon can,—by lack of or insufficiency in copyright marking on the photographs—escape into the public domain, and thus, according to the time of such escape, either prevent the securing of a valid United States copyright therefor, or cause loss of any such copyright as has been secured.

IX. Agreed translations of the parts of the copyright law of the Kingdom of Italy, deemed by the parties relevant herein, are as follows:

"Art. 26. *Duration of an Author's Rights.* The author's right commences with the first execution or representation or publication of the work, and continues for all the life of the author and for fifty years after his death, except as to the exceptions set forth in the present decree.

"Subsequent executions, representations and editions of a work, however added to or modified do not constitute new publications and the right of an author, as to the parts added or changed, as well as to the original work, end at the same time.

"However, if the additions and modifications are such as to constitute a substantial re-creation, the duration of the author's rights shall run from the date of such execution, representation of the work so added to or modified."

"Art. 58. *Deposit of works and publication of registrations.* The author of an intellectual work or those representing him, must deposit in the office for intellectual property in the Ministry of National Economy, one copy of the work, in the manner and within the periods provided by the regulations.

"The omission of the deposit does not prejudice the rights granted to the author by the present decree nor prevent exercise thereof in any manner; but is the basis

for payment of a fine of not less than 50 Lire and for seizure of one or more copies of the work in the hands of whoever may hold the same.

"Art. 59. The office for intellectual property shall give public notice in the manner provided by the regulations as to works deposited, of assignments and transcriptions filed and all other information which it deems of value to authors or the public.

"Art. 60. The books which contain the transcriptions required by Article 50 are public records. Anyone may obtain information, copies and extracts of the said records, examine the entries therein contained, the works deposited and the documents with reference thereto, by complying with the provisions contained in the regulations and paying the appropriate taxes and stamps therein provided to be furnished."

X. A. Picture No. 970 was copyrighted under Copyright Certificate No. 25,456, as part of a catalogue, in the United States on August 28, 1934, with a claim of publication as of July 16, 1934, whereas it was registered in Italy on March 14, 1934.

Picture No. 1032 was copyrighted under Copyright Certificate No. 26,899, as part of a catalogue, in the United States on February 23, 1935, with a claim of publication as of January 1, 1935. However, it had been registered in Italy on December 19, 1934.

The copyrights in respect of Pictures No. 970 and No. 1032, are both of them, in my opinion, invalid by reason of the fact that those pictures were in the public domain so far as the United States was concerned after registration in Italy, for they were then available for copying under Article 60 of the Italian Copyright Law above quoted,—Patterson v. Century Productions, 2 Cir., 93 F.2d 489, 492, and cases there cited,—and this was prior to any claim of publication with notice of copyright complying with the Copyright Law of the United States.

In view of the fact that—as has been observed above—the United States has not joined the International Copyright Union, if, for example, a foreign author—or, as here, a foreign compiler—plans to take out a United States copyright which will be valid, in a book, or the component parts thereof, he must have maintained intact under our law his common law copyright therein, and then he must take such steps as our Copyright Act requires.

■ Therefore, the publication of a book, or, as here, of one of the component parts thereof, in a foreign country, without notice of United States copyright thereon, will prevent the owner of the book from subsequently securing a valid copyright thereof in the United States. American Code Company v. Bensinger, 2 Cir., 282 F. 829, 833; Universal Film Mfg. Company v. Copperman, D.C., 212 F. 301, 303; The Mikado Case, Carte v. Duff, C.C., 25 F. 183, 194; and cf. Ferris v. Frohman, 223 U.S. 424, 434, 32 S.Ct. 263, 56 L.Ed. 492.

The case of Italian Book Company v. Cardilli, D.C., 273 F. 619, cited by the plaintiff's counsel, must, I think, be regarded as having been overruled by the Circuit Court of Appeals in the Bensinger Case to which I have just referred. Furthermore, I find by looking up the Cardilli Case in Shepard's Citations that it has never been cited or followed in any reported case. I think, therefore, that it cannot any longer be regarded as an authority. It is a satisfaction to me to reach this conclusion, as, in view of our law, I have not been able to understand the rationale of Judge Hough's decision in that case.

What I have already said disposes of the question of copyright here involved with regard to three of the six pictures, and leaves Pictures No. 997, No. 1079 and No. 1088 still to be dealt with.

■ B. In the case of Picture No. 997, the Italian registration of copyright in the pictures was subsequent to the registration of copyright of the catalogues, under Copyright No. 26,342, in the United States, and, of course, subsequent to the date of publication claimed in such registration.

The United States copyright in the case of Picture No. 997 as a component part of the catalogue in which it appeared was, therefore, valid.

C. The defendant's counsel has raised, in respect of two of the catalogues, Exhibits 5 and 23, a point on the subject of the validity of copyrights which does not seem ever to have been previously raised,—as it is here—that is the fact that the date of publication, with notice of United States copyright alleged in the applications therefor and in the registrations thereof, is earlier than the actual date of publication with such notice.

This applies to the catalogue containing Pictures No. 858 and No. 970, which is plaintiff's Exhibit 5, and to the catalogue containing Pictures No. 1032, No. 1079 and No. 1088, which is plaintiff's Exhibit 23.

The certificate of copyright registration, No. 25,456, for plaintiff's Exhibit 5 has been marked as plaintiff's Exhibit 6. It is on the same form as the certificate of copyright registration, No. 26,899, Exhibit 24, for the catalogue, Exhibit 23, and mutatis mutandis applies to both. It reads as follows (Italics mine):

"This is to certify (In conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright approved March 4, 1909, as amended by the Act approved March 2, 1913 [17 U.S.C.A. § 55]), that of the Book named herein, by a citizen or subject of a foreign state or nation, ONE complete copy of the best edition published in a foreign country, has been deposited in this Office under the provisions of the Act of 1909, as amended by the Act approved March 28, 1914 [17 U.S. C.A. § 12], and that *registration of a claim to copyright for the first term of twenty-eight years from the date of publication of said book has been duly made* in the name of Giacomo Basevi doing business as N. G. Basevi, claimant of copyright, whose address is Via Ansonio 6, Milan, Italy; the title of the BOOK registered is *"Editions N. B. Catalogue of Reproductions of Religious Paintings from N. 851 to N. 981. By Giacomo Basevi";* the author is a citizen of *Italy;* the book has been published by Giacomo Basevi, doing business as N. G. Basevi at Milano, the date of publication was *July 16, 1934;* one copy was received August 28, 1934; and registration has been made as Class A, Foreign, No. 25456."

It is admitted by the defendant that in respect of the copyright of the catalogue, Exhibit 5, and the catalogue, Exhibit 23, the statement of the date of publication for United States copyright made in the application and carried on into the certificate was not a true date, because it antedated the actual publication with notice of United States copyright.

Catalogue, Exhibit 5, was antedated by about a week. The claimed date of the publication, with notice of United States copyright, was July 16, 1934, but the catalogue was not actually made until about July 23rd or 24th, and so could not have been published as claimed before one of those dates.

Catalogue, Exhibit 23, has more of a spread between the actual date of publication thereof, with notice of United States copyright and the claimed date, because the claimed date is January 1, 1935, and the actual publication with such notice was not until about January 15, 1935.

Inasmuch as every copyright under our Act runs for twenty-eight years *from the date of publication,* the contention of the defendant's counsel is that false antedating of the time of publication with notice makes a copyright invalid *ab initio* because it involves a false claim of the commencement of the monopoly which could not have commenced until the true date of publication, even if there was subsequent compliance with all the other conditions of our statute.

Counsel for the defendant differentiates the situation involved in this case from the situation that was involved in Callaghan v. Myers, 128 U.S. 617, 637, 653, 657, 9 S.Ct. 177, 32 L.Ed. 547, and was before me in the case of Southern Music Pub. Company, Inc. v. Bibo-Lang Company, Inc., D.C., 10 F.Supp. 972, because in those cases, as he points out, the publication date was truly stated in the copyright, and, therefore, the monopoly was valid from the publication date, and the antedating of the copyright notice in the books of the Myers Case and on the music sheets of the Southern Music Company Case did not void the copyright ab initio.

In the present case, however, counsel for the defendant claims that, due to the antedating, there is an intrinsic structural infirmity in each of the plaintiff's two copyrights, Exhibits 6 and 24, which invalidates them both. He points out that if such an antedating at the commencement of a monopoly by a copyright owner were countenanced it might enable him—

1. To claim an infringement of the copyright monopoly before the monopoly came into being, and

2. Owing to the provisions of Section 55 of the Copyright Act, 17 U.S.C.A. § 55, permitting the admission of the certificate of a copyright in any Court as prima facie evidence of the facts therein stated, to succeed with a claim of infringement of copyright which had not yet come into existence, unless, as here, the defendant were able in some way to overcome the prima facie evidence thus allowed to the copyright owner.

As I intimated in the case of Southern Music Publishing Company v. Bibo-Lang, Inc., D.C., 10 F.Supp. 972, at page 973, it seems to me that the copyright laws should be liberally construed, and the administrative acts of the Register of Copyrights should be so construed, if possible, as to carry out the intention of the Constitution to protect and encourage creative artists in their work. Cf. Werckmeister v. American Lithographing Company et al., C.C., 142 F. 827, 831, affirmed in open Court, 2 Cir., 148 F. 1022.

Consequently, it seems to me that the defendant's counsel is assuming a too technical position in claiming invalidity for the two copyrights under discussion.

In any case, I think that they come within the principle of the Callaghan and Southern Music Company Cases because the antedating really constituted a mistake in favor of the public. See, also, American Code Company v. Bensinger, 2 Cir., 282 F. 829, 836.

Obviously, a copyright owner would not be able to recover for an infringement during the period between the date of alleged publication with notice of United States copyright and the actual date of such publication, for during such period there would be a lacuna in his monopoly, due to his own act. The *time* of his first copyright period, however, would be running against him under the cases previously cited in this part of this opinion.

This is quite different from holding, as the defendant's counsel would have me do, that the whole copyright was void ab initio.

However the plaintiff here is not claiming infringements during such lacuna periods in the two copyrights under discussion, and so this interesting question need not be further dealt with herein.

Let it suffice to say that I hold neither of the two catalogue copyrights under discussion have been invalidated ab initio by reason of the antedating above discussed, although for other reasons above given, I have held that the copyrights in respect of Pictures No. 858, No. 970 and No. 1032 were invalid.

XI. I hold that the catalogues which I have held were validly copyrighted and which contained Pictures No. 997, No. 1079 and No. 1088 have exactly the same juridical status as was assigned by the Circuit Court of Appeals in Fleischer Studios, Inc., et al. v. Ralph A. Freundlich,

Inc., 2 Cir., 73 F.2d 276, at page 278, to the "Betty Boop" cartoon characters there displayed in bound leaf form, for an examination of the printed record on appeal in that case—at page 179—confirms my recollection that the bound folder of "Betty Boop" cartoons was copyrighted as a "book".

■ A. As these catalogues were the subject of book copyrights—and what was protected was such component parts of the copyrighted book as had never before been in the public domain—the plaintiff cannot, therefore, maintain his copyright by having the form of copyright notice put on them, required for reproductions of works of art, under the requirements of Section 18 of the Copyright Act, 17 U.S.C.A. § 18.

In the case of Fleischer Studios, Inc., et al. v. Ralph A. Freundlich, Inc., 2 Cir., 73 F.2d 276, however, the marking approved at page 277 for the "Betty Boop" dolls gave the name of the person who owned the copyright, although it was stated at page 278 that the *date* of the copyright need not be included in the copyright notice on reproductions, because—being without story or continuity—the bound folder of cartoons could not properly be classified as a "printed literary work" under Section 18 of the Copyright Act, 17 U.S.C.A. § 18.

This same comment is apt here, except that there should be added, that if the copyright owner elects to give the date of the copyright, the date given must certainly not be later than the actual date.

The plaintiff having chosen a book copyright as the form of monopoly, in his opinion, most advantageous to him, must, therefore, to preserve his copyright monopoly on separate pictures, follow the rules of marking required under Section 19 of the Copyright Act, 17 U.S.C.A. § 19, as interpreted in the Fleischer Case. Cf. Hoague-Sprague Corp. v. Meyer, D.C., 31 F.2d 583, 586; Herbert v. Shanley, 2 Cir., 229 F. 340, 344; and see, also, Dejonge & Co. v. Breuker & Kessler, 235 U.S. 33, 36, 35 S.Ct. 6, 59 L.Ed. 113.

■ Furthermore, it seems to me, it is of the essence in the preservation of a copyright monopoly therein that when a photograph embodying an artistic conception, taken from a copyrighted catalogue, is sold, it should have printed on it a notice of copyright which will identify the owner of the copyright to anyone who may purchase the photograph. Otherwise it would be quite impossible for anyone buying the photograph to find out whether the copyright notice was a valid notice with its source in a real copyright monopoly.

Certainly the minimum form of notice should be such as was approved as adequate in the Fleischer Case, 2 Cir., 73 F.2d at page 277.

■ B. Even if I am in error as to the invalidity of the copyrights on Pictures No. 858, No. 970 and No. 1032, there is another reason why the complaint should be dismissed,—which applies to all pictures —namely, the fact, which I find, that the plaintiff has negligently and consistently failed properly to mark for copyright purposes the photographs of the subjects taken from its catalogues and here involved.

It becomes, therefore, unnecessary for the purpose of reaching a decision herein for me to deal with the question of the defendant's being an innocent infringer.

■ C. In the case of a patent, failure to mark patented articles with a statutory notice may prevent collection of damages from an infringer, but it has not any effect on the validity or life of the grant of the patent monopoly. Cf. Hazeltine Corporation v. Radio Corporation, D.C., 20 F. Supp. 668. That a copyright owner should maintain a statutory marking is, however, of the essence to the preservation of the copyright monopoly. Fleischer Studios, Inc., et al. v. Ralph Freundlich, Inc., 2 Cir., 73 F.2d 276, 277.

In that case the Circuit Court of Appeals said at page 277 (italics mine): "The provisions of the statute, as to notice, must be complied with in making and selling a copyrighted article, or otherwise there is a dedication to the public and the copyright protection is lost. *'Publication with notice of copyright is the essence of compliance with the statute, and publication without such notice amounts to a dedication to the public sufficient to defeat all subsequent efforts at copyright protection.'* Universal Film Mfg. Co. v. Copperman, D.C., 212 F. 301, 302, affirmed [2 Cir.], 218 F. 577. See Mifflin v. R. H. White Co., 190 U.S. 260, 23 S.Ct. 769, 47 L.Ed. 1040; Thompson v. Hubbard, 131 U.S. 123, 9 S. Ct. 710, 33 L.Ed. 76; Haas v. Leo Feist, Inc., D.C., 234 F. 105."

■ The only excuse available to the copyright owner who has failed to mark reproductions of his copyrighted article is stated in Section 20 of the Copyright Act, 17 U.S.C.A. § 20, to be when he has

through "accident" or "mistake" failed to mark some "particular copy" or "copies" although he has "sought to comply" with the marking requirements of the Act.

In the present case, I do not think that the defendant has "sought to comply" with the marking requirements of the Act, but, on the contrary, has negligently and carelessly failed to do so in respect of all six pictures.

This is very well illustrated in the table which has been submitted by counsel for the defendant and which I find is correct.

This table shows instances, in respect of each picture, in which it has been allowed to escape into the public domain by having on it a wrong copyright notice or by not having any copyright notice whatever printed on it.

The table is as follows:

made to be separately used by being torn off and pasted on cards or letters.

D. I think that Picture No. 1079 falls into a slightly different category.

That picture, as shown by defendant's Exhibit DD, was copied from a photograph that did not contain any copyrighted marking, and it is not shown by the plaintiff that this photograph was a sample or that the marking thereof was omitted by "accident" or "mistake".

 Samples, it is true, do not require the statutory notice of copyright printed on them, and cannot be considered a publication,—Gerlach-Barklow Co. v. Morris & Bendien, 2 Cir., 23 F.2d 159, 162—for publication is made only when the subject matter involved is made available, by act of the owner thereof, so that copies thereof may be made. Patterson v. Century Produc-

| Subject | Exhibit | Description |
|---|---|---|
| No. 858 | Def. KK | 858 on back of stamp book — notice 1937 |
| | " RR | Page of 858 stamps — book notice 1937 |
| | " SS | " " " — " " 1937 |
| | " HH | " " " — no notice anywhere |
| | " P–Q–R–S–T–U | 12 examples of 858 in 6 different styles with no notice |
| | " OOO | 858 as calendar — no notice (actually copies by Def.) |
| | Plf. 33 | 858 as calendar like one sent to O'Toole |
| No. 970 | Def. II | 970 stamps — cover notice 1937 |
| | " QQ | 970 stamps — no notice anywhere |
| | " V–W | 13 examples of 970 in two styles |
| No. 997 | Def. II | On back of stamp book — notice 1937 |
| | " II | Sheet of 997 stamps — notice 1937 on cover |
| | " QQ | Sheet of 997 stamps — no notice anywhere |
| | " JJ | 997 on back — no notice anywhere |
| | " VV | 997 on prayer book — no notice |
| | " LL | 997 cards — 2 examples — notice 1937 |
| | " Z–Y | 997 cards — 7 examples in two styles |
| | " X | 997 cards actually copied — no notice |
| No. 1032 | Def. KK | 1032 sheet of stamps — cover notice 1937 |
| | " JJ | " " " — no notice anywhere |
| | " AA–BB–CC | 14 examples in 3 styles of 1032 — no notice |
| | " EE | 1032 as actually copied by defendant — no notice |
| | " NN | 1032 marked 1935 instead of 1934 |
| No. 1079 | Def. DD | 1079 actually copied by Def. — no notice |
| No. 1088 | Def. SS | 1088 back cover stamp book — notice 1937 |
| | " GG–FF | 1088 — 17 examples in 2 styles — no notice |
| | " PP | 1088 card — notice 1936 |

The plaintiff's neglect in respect of copyright notices is perhaps most graphically illustrated as to all the pictures,—except No. 1079—in the stamp books which were sold here through its agents or correspondents. None of the stamps therein has any copyright marking, and all were expectably tions, 2 Cir., 93 F.2d 489, 492, and cases there cited. But, obviously, as samples are exceptions to the statutory requirements as to marking, the burden is on the copyright owner to bring himself within such exception by clearly showing that the reproductions in question were samples only, and

were not publications of the subject matter of the copyright, or of part thereof.

The plaintiff has wholly failed to sustain that burden.

E. To summarize—

All claims of infringement in respect of Picture No. 858 have been withdrawn.

In respect of Pictures No. 970 and No. 1032, I have held, for the reasons above given, that the United States copyright was invalid ab initio. But if I am wrong in this holding, nevertheless the copyrights on those pictures would have been lost by reason of failure to maintain proper copyright notices on copies of them which were sold here.

In respect of Pictures No. 997 and No. 1079 and No. 1088, which I have held were validly copyrighted in their respective catalogues, copyright thereof was also lost by failure to publish with proper notice.

XII. I think the foregoing sufficiently deals with the general outline of the facts and with the questions of law involved.

A. Counsel for the defendant must, therefore, submit to me, through the Clerk's office, findings of fact and conclusions of law in accordance with this opinion under the rule above referred to, and give five days' notice thereof to counsel for the plaintiff.

Counsel for the plaintiff may on the return day of such notice submit criticism of the findings of fact and conclusions of law proposed by the defendant's counsel.

All the proposed findings and conclusions submitted by the defendant must be typed in triple spacing so that I may conveniently correct them if I wish to do so.

Only the findings of fact and conclusions of law which I sign will be filed as part of the record herein. So the better practice for the plaintiff will be not to suggest counter findings but to limit himself to criticism of the defendant's findings.

B. As the defendant has prevailed, it is entitled under the Copyright Act to full costs which includes all taxable disbursements—Copyright Act, Section 40, Title 17 United States Code, Section 40, 17 U.S.C.A. § 40—Marks v. Leo Feist, Inc., 2 Cir., 8 F. 2d 460; but, because the defendant admits that it knowingly copied the plaintiff's pictures, I do not allow it any attorney's fee because that is a discretionary matter, and, sitting in a court of equity, I will not exercise my discretion in favor of a free-booter.

C. After the findings of fact and conclusions of law are signed, the defendant may submit a final decree providing for the dismissal of the complaint herein with costs, but without any allowance for attorney's fee.