## SIEFF et al. v. CONTINENTAL AUTO SUPPLY, Inc., et al.

### No. 373.

District Court, D. Minnesota,
Fourth Division.

May 16, 1941.

Brill & Maslon, of Minneapolis, Minn., for plaintiff.

Charles C. Reif, of Minneapolis, Minn., for defendant.

JOYCE, District Judge.

This matter is before the court on the motion of the plaintiffs for summary judgment, or, in the alternative for an adjudication of as many of the issues as may be adjudicated pursuant to the motion, in accordance with the provisions of Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The complaint alleges in substance for a first cause of action the infringement of the copyright on plaintiffs' catalog entitled "Dealers' Confidential Price List No. 470" by the publication and placing upon the market by the defendants of a book entitled "1940 Wholesale Summer Catalogue", which said book it is alleged was by said defendants knowingly and intentionally copied largely from plaintiffs' copyrighted book; and for a second cause of action the infringement by said publication of the copyright on plaintiffs' catalog entitled "Dealers' Confidential Price List No. 471". The defendants in their answer make a general denial of the charges of infringement set forth in the complaint. Both parties are engaged in the business of the sale and distribution, among other things, of automobile supplies, parts, tires and accessories, with respective principal places of business at Minneapolis, Minnesota.

Plaintiffs' motion is supported by various affidavits. Defendants filed counter-affidavits.

It appears from the affidavits that it is the practice of plaintiffs to issue a new catalog of the same general character every three months, changes being made as the necessities of the stock and trade suggest, though each succeeding catalog is in large part a duplication of preceding issues. Plaintiffs' affidavits list over 100 items appearing in their copyrighted catalogs 470 and 471 which it is alleged have been copied without permission by defendants in their 1940 Summer Catalogue. There seems to be no question but that these items were substantially copied by the defendants from the plaintiffs' copyrighted catalogs but as a defense to their action defendants contend that with the exception of two items, reference to which will be hereafter made, all of the material copied had appeared either in an uncopyrighted catalog, No. 468, published by plaintiffs prior to the issuance of Nos. 470 and 471, or in a catalog issued without copyright notice subsequent to the publication of Nos. 470 and 471, namely No. 472, and that therefore the matter had been dedicated to the public prior to the publication of defendants' book, and no infringement occurred.

There is dispute between the parties as to the respective dates of publication of defendants' summer catalog and plaintiff's No. 472, and while plaintiffs in their brief state that "there is nothing in the affidavits of the defendants which states unequivocally * * * that plaintiffs' catalog No. 472 was published before the defendants' catalog", the affidavits do disclose that plaintiffs' catalog No. 472 was not circulated until the 25th day of June, 1940, and that defendants' Summer Catalogue was "first mailed and thus first published on July 29, 1940".

It was further established by the affidavits on behalf of defendants that all but some thirty of the items in question did appear in plaintiffs' uncopyrighted catalog No. 469 and were therefore dedicated to the public prior to the publication of copyrighted catalogs No. 470 and No. 471. This is conceded by plaintiffs, so that we are now concerned only with the validity of the copyright on the remaining thirty items, which first appeared in either 470 or 471 and with respect to which the defendants contend that since they were republished in uncopyrighted catalog No. 472, defendants were free to copy them or any other matter found in such catalog even though the items involved had been previously protected by the copyright of catalogs 470 and 471, and that plaintiffs have lost any right of action which they may have had upon matter appearing in such copyrighted catalogs by failure of notice in No. 472.

Plaintiffs base their right of action largely upon the provisions of Section 6 of Title 17, U.S.C.A., which reads as follows:

"Copyright on compilations of works in public domain or of copyrighted works; subsisting copyrights not affected. Compilations or abridgments, adaptations, arrangements, dramatizations, translations, or other versions of works in the public domain, or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this title; *but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof,* or be construed to imply an exclusive right to such use of the

original works, or to secure or extend copyright in such original works [Italics ours]." taking the position that catalog No. 472 was merely a new edition of copyrighted catalogs 470 and 471 with comparatively minor changes and under Section 6 would be defined as a "new work", and that the publication of No. 472 without copyright notice "did not affect the force or validity of the subsisting copyright upon the matter employed or any part thereof"; in other words, that there is a subsisting copyright upon the thirty items here involved which under the language of the underlined portion of Section 6 was not lost by reason of the fact that they were contained in the new publication; that by Section 6 there is a permissive right to copyright the "new work", but that the publication of a new work without copyright cannot be considered as an abandonment of a copyright to another work.

The defendants have no quarrel with plaintiffs' claim that No. 472 would properly be regarded as a new work, subject to copyright, and I likewise agree with such interpretation of Section 6 as applied to the facts in this case. "Mr. Justice Clifford at Circuit in the leading case of Lawrence v. Dana, 4 Cliff. 1, Fed.Cas. No. 8,-136, while holding that there could be but one copyright, treated subsequent editions with notes or improvements as new books subject to copyright." West Publishing Company v. Edward Thompson Co., 2 Cir., 176 F. 833, 836.

Defendants strenuously urge, however, that the validity of the subsisting copyright upon the material taken from catalogs 470 and 471 and used in 472 cannot be maintained and secured if notice of such copyright is not carried in the new work.

It will be noted that Section 6 does not concern itself with notice, but in order to keep the copyright alive heed must be given to the provisions of the Act regarding notice contained in Section 9 of Title 17, U.S.C.A. which are as follows: "Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, except in the case of books seeking ad interim protection under section 21 of this title."

The rule is summarized by the court in Universal Film Mfg. Company v. Copperman, D.C., 212 F. 301, in the following language: "Publication with notice of copyright is the essence of compliance with the statute, and publication without such notice amounts to a dedication to the public sufficient to defeat all subsequent efforts at copyright protection."

Also, as stated by the court in the case of Smith v. Bartlett, D.C., 18 F.Supp. 35, 36, 37:

"Copyright holders are given certain monopolistic rights by statute, but they can be maintained only by complying with the terms of the statute, which provides, as to notice, for the benefit and protection of third persons, that the notice of copyright shall be affixed to each copy published or offered for sale in the United States by authority of the copyright proprietor. * * *

"If a copyright owner desires to preserve his monopoly he must put the public on notice that he claims it. By a publication without such notice he is presumed to waive his right and to give his work to the public. Goes Lithographing Co. v. Apt Lithographic Co. (D.C.) 14 F.Supp. 620; Thompson v. Hubbard, 131 U.S. 123, 9 S. Ct. 710, 33 L.Ed. 76."

While under Section 6, as plaintiffs contend, the original matter copyrighted retains the protection of the copyright when carried into a "new work", it seems to me that the copyright owner loses his rights to such protection when he neglects to include the prescribed notice in the new edition, and would be deemed by his action to have abandoned his copyright, regardless of his insistence that it was not his intention to so abandon it. A stranger to the situation who had no knowledge of any previous catalogs, on seeing uncopyrighted 472 could feel free to copy any or all matter therein contained since he would have no notice of the copyright on the portions taken from the previously copyrighted edition.

In Thompson v. Hubbard, 131 U.S. 123, 9 S.Ct. 710, 720, 33 L.Ed. 76, Thompson possessed a copyright on his book which he assigned to Hubbard and Ayer, Hubbard later buying Ayer's interest. Thompson's publication of the book was held to be with a correct notice. The notice used in publication by Hubbard was held to be insuf-

ficient. Later Thompson with full notice of the copyright published the book, resulting in Hubbard's suing him for infringement. In denying Hubbard relief, the Supreme Court said:

"It is not enough that Thompson, while he owned the copyright, gave the required notice in the copies of every edition he published while it was *his* copyright. The inhibition of the statute extended to and operated upon Hubbard while he owned the copyright, in respect to the copies of every edition which he published, and for his failure he is debarred from maintaining his action. * * * But we are of opinion that the failure of Hubbard to comply with the statute operated to prevent his right of action against Thompson from coming into existence."

Plaintiffs dismiss the application of this case by stating it was decided in 1889 before the present copyright law came into existence. It is true that Section 20, 17 U.S.C.A. § 20, hereafter referred to, was not then in the Act, but the law was substantially the same with respect to notice as at present (See Amdur page 448, Section 1,) and the case will be found cited as late as Metro-Goldwyn-Mayer Distributing Corp. v. Bijou Theatre Co., 1 Cir., 59 F.2d 70, 74; Smith v. Bartlett, D.C., 18 F.Supp. 35, 37; Smith v. Wilkinson, D.C., 19 F.Supp. 841, 842; and Basevi v. Edward O'Toole Co., D.C., 26 F.Supp. 39, 48.

In Bentley v. Tibbals, 2 Cir., 223 F. 247, 257, it appears that the plaintiff Bentley published in 1906 a copyrighted book known as "Bentley's Telegraph Cyphers". Later in England he published a larger work known as "Bentley's Complete Phrase Code" and secured a British copyright thereon, this latter book containing material from Telegraph Cyphers and with notice of the United States copyright. About 1910 Bentley brought the second book to the United States where copies were sold. In holding the book to be uncopyrighted the court said:

"We do not decide in this case that Bentley has lost his copyright in the Telegraph Cyphers, so that any one is at liberty to reprint that book. Whether he has or has not lost that right is not before us and is not decided. What we do decide is that he has no standing in court to prevent by injunction the publication of the Complete Phrase Code, which is an uncopyrighted work, the whole of which the defendant was at liberty to reprint, including the matter taken from the Telegraph Cyphers, although copyrighted, as there is nothing in the work which indicates the copyrighted from the uncopyrighted matter."

In the case of Record & Guide Company v. Bromley, C.C., 175 F. 156, 161, the court held that one's right to copyright "could only be protected by repeating the original notice whenever the copyrighted matter should be afterwards published", citing Mifflin v. Dutton, 190 U.S. 265, 23 S.Ct. 771, 47 L.Ed. 1043. See, also, to the same effect, Basevi v. Edward O'Toole Co., D.C., 26 F.Supp. 41; Atlantic Monthly Co. v. Post Publishing Co., D.C., 27 F.2d 556; and McDaniel v. Friedman, 7 Cir., 98 F.2d 745. The cases cited and many others lead me to the conclusion that whatever rights existed under Section 6 were not preserved by reason of failure of notice in the publication of No. 472.

We then come to the question of whether or not the provisions of Section 20 are available to plaintiffs in endeavoring to overcome the charge made by the defendants that they had dedicated the matter in question to the public by failure to include notice in No. 472. Without receding from their position that Section 6 secures their rights, plaintiffs contend that Section 20 of the Act likewise is of aid in their situation. This section provides:

"Where the copyright proprietor has sought to comply with the provisions of this title with respect to notice, the omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright or prevent recovery for infringement against any person who, after actual notice of the copyright, begins an undertaking to infringe it, but shall prevent the recovery of damages against an innocent infringer who has been misled by the omission of the notice; and in a suit for infringement no permanent injunction shall be had unless the copyright proprietor shall reimburse to the innocent infringer his reasonable outlay innocently incurred if the court, in its discretion, shall so direct."

It was not made clear how many copies of catalog 472 were published. In their brief plaintiffs say: "Why then should he not be protected when he has the notice in 50,000 copies, and leaves it off of a new catalog for a period of three months, and then issues another catalog of another

25,000, copies of which contain the notice * * *"? (This latter issue of 25,000 copies presumably refers to catalog No. 473 published subsequent to No. 472.)

From that statement it was assumed by defendants, and not denied by plaintiffs that 25,000 copies of catalog 472 were published and distributed. Thus we have here a situation where under Section 6, 472 is deemed to be a new publication subject to copyright, although no copyright was ever applied therefor, nor no notice affixed as to the existing copyright on certain of the material therein contained. So that as to the new matter in 472 obviously no effort was made to comply with the provisions of the Act with respect to notice; as to the thirty items involved plaintiffs assert there was an attempt to comply with the provisions regarding notice as the same was contained in Nos. 470 and 471, and that as to these items they had thus fulfilled the first requisite for relief under Section 20.

Plaintiffs then state that the omission of notice from 472 as to the items here involved was due to "neglect and oversight". According to the statute, the omission must be by "accident or mistake". As said by Judge Woolsey in the case of Basevi v. Edward O'Toole Co., D.C., 26 F.Supp. 41, 48:

"The only excuse available to the copyright owner who has failed to mark reproductions of his copyrighted article is stated in Section 20 of the Copyright Act, 17 U.S.C.A. § 20, to be when he has through 'accident' or 'mistake' failed to mark some 'particular copy' or 'copies' although he has 'sought to comply' with the marking requirements of the Act."

Weil, in his work on Copyrights, page 350, says in referring to this Section: "Whether the omission of the notice was due to accident, mistake or otherwise would present a question of fact in each case."

Plaintiffs made no showing that the omission was by accident or mistake and I do not believe that negligence or oversight come within the meaning or scope of the terms used in the statute. Such a mistake as was contemplated by the statute was present in the case of United Thrift Plan v. National Thrift Plan, D.C., 34 F. 2d 300, 302, where the plaintiff had sought to comply with the Act but had placed the notice in the wrong place. The copyright was held invalid and in discussing Section 20 the court said: "It will be noted that it was not the intent of Congress to relieve where the notice was omitted from all copies, but only where by accident or mistake it was omitted from a limited number of copies."

Since the purpose of Section 20 "was to prevent the loss of copyright by accidental omission on a few copies", Goes Lithographing Co. v. Apt Lithographic Co., D.C., 14 F.Supp. 620, 621, under all the circumstances of this case I would not regard the omission of notice from an entire issue of 25,000 copies as being within the limits prescribed by the statute, and it is therefore my view that plaintiffs have no recourse to the curative provisions of Section 20.

With reference to the two items heretofore mentioned which did not appear in either catalog 469 or 472, namely, the O'Boy hydraulic jack item and the sleet shaver:

▆▆ As to the O'Boy jack item defendants contend that the copyright on the cut is invalid for lack of originality. The evidence shows that the Hein-Werner Motor Parts Corp. of Waukesha, Wisconsin, was the manufacturer of this instrumentality; that the first publication by the manufacturer of a cut of this jack was in its catalog printed in June, 1939, a date earlier than the date of publication of any of the catalogs here involved. I am unable by comparison to find anything original or novel or substantially different in plaintiffs' cut from the manufacturer's cut, and the cut therefore was in the public domain and not the subject of copyright at the time of defendants' publication of it. At most any changes are colorable. Merely colorable changes or changes in the position or parts in a picture or photograph are not subject to copyright. See Gross et al. v. Seligman, 2 Cir., 212 F. 930. And in this connection the test of sameness or similarity is determined by the eye of the ordinary observer. Falk v. Donaldson et al., C.C., 57 F. 32. Furthermore, there is a similarity in words and phrases used to exploit the virtues of the jack appearing in both plaintiffs' 470 and the manufacturer's catalog. Nothing of originality appears in a copied phrase or where an obvious effort at disguising the copied phrase exists. The Supreme Court in Higgins v. Keuffel, 140 U.S. 428, 11 S.Ct. 731, 732, 35 L.Ed. 470, said:

"To be entitled to a copyright the article must have by itself some value as a composition, at least to the extent of serving some purpose other than as a mere advertisement or designation of the subject to which it is attached."

See, also, Fargo Mercantile Co. v. Brechet & Richter Co., 8 Cir., 295 F. 823; and Bobrecker v. Denebeim, D.C., 28 F.Supp. 383, 384.

Referring now to the two cuts of the sleet shaver not found in catalogs 469 or 472 but appearing in plaintiffs' copyrighted catalog 470. One cut gives a view of the back of the shaver and is practically identical with a cut appearing in the manufacturer's circular. In another cut the shaver is held in the hand of an operator being applied to a small portion of windshield. This cut is not the same as the manufacturer's but there is no striking originality suggested by plaintiffs' cut. The basic idea was the cleaning of the windshield as suggested by the manufacturer's cut. No originality is suggested by position or posture in the holding or applying of the shaver. Here again the phrases as to the virtues of the shaver suggest the adoption of the manufacturer's material by the plaintiffs' draftsman. Were my conclusion on the shaver otherwise and to the effect that there was originality with plaintiffs', making the cut copyrightable, nevertheless it is most apparent that the alleged infringement of both the shaver and the jack does not constitute the appropriation of a substantial and material part of plaintiffs' copyrighted catalog. Defendants' counsel in his brief computes the hydraulic jack cut and the sleet shaver cut combined to cover a total of 4.22 square inches, and the whole catalog 12,440 square inches, making defendants' use less than one three-thousandths part of plaintiffs' catalog. These figures and the conclusion therefrom have not been questioned in the plaintiffs' reply brief. Amdur, in Section 13, Chapter 20, page 677 of his work, says: "Infringement, however, is not committed unless a substantial and material part of the copyrighted work is copied"

In Eggers v. Sun Sales Corp., 2 Cir., 263 F. 373, 375, the court stated that where the subject of copyright is a book "infringement consists in the copying of some substantial and material part thereof." See, also, Marks v. Leo Feist, Inc., 2 Cir., 290 F. 959.

From a study of the complete record and the briefs in this case I am of the opinion that the plaintiffs have no cause of action against the defendants; that their motion for a summary judgment should be denied; that as all issues raised by the pleadings have been tried, the defendants' prayer for relief should be granted, except as to the allowance of an attorney's fee, and the plaintiffs' bill of complaint be dismissed. Defendants are allowed their costs.

Findings of fact and conclusions of law will be filed together with this memorandum. An exception will be accorded the plaintiffs.