**EAGLE – FREEDMAN – ROEDELHEIM CO. and Weiner & Gossage, Inc.**

v.

**ALLISON MANUFACTURING CO., Inc.**

Civ. A. No. 31224.

United States District Court
E. D. Pennsylvania.

April 23, 1962.

Charles M. Solomon and Franklin A. Wurman, Philadelphia, Pa., for plaintiffs.

Arthur H. Seidel and Edward C. Gonda, Philadelphia, Pa., for defendant.

LUONGO, District Judge.

This matter is before the Court on plaintiffs' motion for preliminary injunction. After hearing, the Court makes the following

## FINDINGS OF FACT

1. The plaintiff, Weiner & Gossage, Inc., hereinafter called "Weiner", is a California corporation with its principal place of business at San Francisco, California, and is a citizen of the State of California.

2. The plaintiff, Eagle-Freedman-Roedelheim Co., hereinafter called "Eagle", is a Pennsylvania corporation with its principal place of business at Quakertown, Pennsylvania, and is a citizen of the State of Pennsylvania.

3. The defendant, Allison Manufacturing Co., Inc., hereinafter called "Allison", is a New York corporation with its principal place of business at Allentown, Pennsylvania, and is a citizen of the States of New York and Pennsylvania.

4. Weiner is an advertising agency which, at sometime in the latter part of 1961, conceived the idea of imposing prints of Beethoven, J. S. Bach and Brahms on sweatshirts as part of a promotional endeavor on behalf of one of its clients, Sicks' Rainier Brewing Co.

5. Robert Freeman, President and Art Director of Weiner, performed independent research to locate engravings of Beethoven, J. S. Bach, and Brahms, suitable for reproduction on garments, and more particularly on sweatshirts. In the San Francisco libraries he found suitable engravings of Beethoven and J. S. Bach in a book on composers identified as Plaintiffs' Exhibit 1, and of Brahms in Etude magazine identified as Plaintiffs' Exhibit 2. All three of the engravings used by him were from the late 19th century and were in the public domain.

6. Weiner, through Robert Freeman, copied the engravings of the three composers and produced the necessary art work and silk screens for the production of prints on garments, more particularly on sweatshirts.

7. In November, 1961, Radio Station KSFR, San Francisco, distributed approximately 600 sweatshirts to its listeners who wrote letters requesting Beethoven, J. S. Bach or Brahms sweatshirts. The distribution was with the knowledge and consent of Weiner and Weiner's art work in the form of silk screens was used in the production of said sweatshirts. The sweatshirts so distributed by Radio Station KSFR did not bear any notice of copyright.

8. In December, 1961, Weiner made changes of a minor nature in the art work and produced new silk screens including, among other things, a notice of copyright showing ownership in Weiner & Gossage, Inc., and the year of 1962.

9. During December, 1961, Weiner in connection with the promotion of the business of Rainier Brewing Co., solicited orders to be sent to Rainier Brewing Co. of Beethoven, J. S. Bach and Brahms sweatshirts. The orders so solicited were filled by Weiner and said sweat-shirts were sold by Weiner by mail order, the sweatshirts containing the notation "Copyright 1962, Weiner & Gossage, Inc."

10. In January, 1962, the Register of Copyrights issued to Weiner Certificate No. H16447 (registering the print of Beethoven on a garment); Certificate No. H16448 (registering the print of J. S. Bach on a garment); and Certificate No. H16449 (registering the print of Brahms on a garment). Said certificates set forth the date of first publication as January 2, 1962. Weiner set forth said date of first publication in the application for copyright because it was the first working day of 1962 and Weiner anticipated that most of its sales would take place commencing in 1962.

11. In January, 1962, plaintiff Weiner entered into an oral agreement with plaintiff Eagle under the terms of which Eagle was given permission to sell Beethoven, J. S. Bach and Brahms sweatshirts, utilizing Weiner's art work, bearing the copyright notice showing registration of copyright by Weiner and providing for payment by Eagle for that privilege. The agreement also established a quality standard for the basic sweatshirt and a retail price at which the product was to be sold.

12. Weiner sent samples to Eagle of the type of sweatshirt to be used for distribution and sale under the licensing agreement. Eagle submitted to Weiner for inspection, one batch, consisting of approximately three dozen sweatshirts manufactured for Eagle containing the imprint of the art work supplied by Weiner. The oral agreement between the parties did not make specific provision for periodic inspection and control of the product to be distributed and sold by Eagle.

13. Eagle commenced its own advertising campaign on January 17, 1962, and commenced a large-scale distribution of Beethoven, J. S. Bach and Brahms sweatshirts late in January, 1962, including a shipment to Wallachs, New York City, on January 26, 1962. Plaintiff Eagle has expended substantial effort in ad-

vertising and sales promotion of the Beethoven, J. S. Bach and Brahms sweatshirts.

14. Sweatshirts containing the imprint of the portraits of the above-named composers are identified in the minds of the public and by retailers in the apparel industry as Beethoven sweatshirts, Bach sweatshirts and Brahms sweatshirts.

15. On or about January 29, 1962, defendant Allison, through one of its salesmen, purchased plaintiffs' Brahms sweatshirt at Wallachs. He took the shirt to Norman Schneider, President of Allison, advising him that his customers had expressed interest in placing orders for Beethoven, J. S. Bach and Brahms sweatshirts if Allison would make them.

16. Notwithstanding the notice of copyright appearing on said sweatshirt, Schneider, Allison's President, forwarded the shirt to defendant's art department with instructions to copy the Beethoven, J. S. Bach and Brahms art work. Pursuant to Schneider's instructions, plaintiffs' Beethoven and J. S. Bach sweatshirts were acquired and plaintiffs' art work was copied therefrom without resort to independent search for pictures or engravings of the said composers in the public domain. Changes were made by defendant's art department for the purpose of avoiding the appearance of having been copied. At that time, defendant was not aware of the distribution of sweatshirts without notice of copyright by Radio Station KSFR in November, 1961.

17. Defendant Allison, commencing early February, 1962, using art work inferior to but copied from that on plaintiffs' sweatshirts, and using a basic sweatshirt inferior in quality to that used by plaintiffs, printed and distributed at a price of $18.50 a dozen Beethoven, J. S. Bach and Brahms sweatshirts for sale at retail at approximately $2.00 each, in competition with plaintiffs' sweatshirts which were distributed at a price of $28.50 a dozen for sale at retail at approximately $4.00 each. Defendant's shirts bore, on the front thereof, the legend, "An Allison Product".

18. On February 8, 1962, Weiner made application for trademark registration of labels bearing the names, respectively, "Beethoven Brand Sweatshirts", "Bach Brand Sweatshirts" and "Brahms Brand Sweatshirts", as well as for a label for the combination of the three names.

19. Weiner asserts common law trademark rights in the marks "Beethoven Brand Sweatshirts", "Bach Brand Sweatshirts" and "Brahms Brand Sweatshirts" claiming a first date of use of February 2, 1962.

20. Weiner has no registration for, or application pending, in the Patent Office seeking to register portraits of either Beethoven, J. S. Bach or Brahms or a composite group as a trademark.

21. The portraits of Beethoven, J. S. Bach or Brahms and the identifying names below the portraits on the sweatshirts are ornamentation and do not function to indicate origin of the sweatshirts.

22. The terms of the oral license from Weiner to Eagle are vague and indefinite as to controls, inspection, materials and the manner in which the marks are to be advertised so as to indicate origin.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter and over the parties, 28 U.S.C.A. § 1338.

2. Plaintiffs' Beethoven, J. S. Bach and Brahms art work is sufficiently original and changed from the engravings in the public domain to be copyrightable.

3. Plaintiffs have not shown that the omission of notice of copyright on shirts distributed without notice of copyright did not constitute a dedication of the Beethoven, J. S. Bach and Brahms art work.

4. Plaintiffs have not established that the marks "Beethoven Brand Sweatshirts", "Bach Brand Sweatshirts" and "Brahms Brand Sweatshirts" indicate origin when used in conjunction with sweatshirts having portraits of Bee-

thoven, J. S. Bach or Brahms thereon. Plaintiff Weiner has not established that it has valid trademark rights in the names "Beethoven", "Bach" or "Brahms".

5. Plaintiffs have not established that the product in question has become associated in the public mind with plaintiffs as the producers of the product.

6. Plaintiffs have failed to establish, in the absence of proof of valid copyright or trademark rights, that defendant was guilty of unfair competition in capitalizing on the market created by plaintiffs.

■ 7. Preliminary injunction is an extraordinary remedy which should be exercised only in clear cases in which it appears certain that plaintiff will prevail at the trial of the cause. Plaintiffs have not established their right to preliminary injunction for copyright or trademark infringement or for unfair competition.

## DISCUSSION

Plaintiffs seek preliminarily to enjoin the defendant from the production and distribution of sweatshirts bearing a silk screen imprint of the portraits of the composers Beethoven, J. S. Bach and Brahms. Plaintiffs seeks this extraordinary relief on the grounds of copyright infringement, common law trademark usage, and unfair competition.

With respect to plaintiffs' claim of copyright infringement, there is no doubt in the Court's mind that the defendant copied Weiner's art work from the sweatshirts sold by Weiner's licensee, Eagle. Unfortunately for plaintiffs, the validity of the copyright for that art work is subject to serious attack from prior publication by distribution of sweatshirts bearing substantially the same art work without notice of copyright. Such publication without notice could be fatal to plaintiffs' claim [Thompson v. Hubbard, 131 U.S. 123, 9 S.Ct. 710, 33 L.Ed. 76 (1889); Deward & Rich, Inc. v. Bristol Savings & Loan Corporation, 120 F.2d 537 (4th Cir. 1941); Kraft v. Cohen, 117 F.2d 579 (3rd Cir. 1941)] unless the omission was due to mistake or accident. 17 U.S.C.A.

§ 21. There is nothing in the testimony before me, at this time, to explain away the distribution of sweatshirts without notice of publication by Radio Station KFSR during November, 1961. With the admitted distribution of those sweatshirts bearing art work changed, it appears at this stage, only in minor degree from that attempted to be copyrighted, the Court cannot say with any degree of certainty that plaintiffs will ultimately prevail on the issue of copyright infringement at the trial of this matter.

■ As for the common law trademark and unfair competition claim, the plaintiffs have established that sweatshirts bearing a pictorial representation of the composers are identified in the minds of the consuming public and by retailers in the apparel industry as Beethoven, Bach and Brahms sweatshirts but they have not established that the terms "Beethoven", "Bach" or "Brahms" used in connection with sweatshirts indicate any more than reference to ornamentation as opposed to source of origin of the product nor have the plaintiffs established that the public is as much concerned with who produces the product as it is with the *idea* of sweatshirts bearing imprinted portraits of the composers. The absence of these factors, particularly when considered in light of the fact that defendant's shirts bear the clear legend "An Allison Product" renders questionable plaintiffs' ultimate ability to prevail. Sylvania Electric Products, Inc. v. Dura Electric Lamp Company, Inc., 247 F.2d 730 (3rd Cir. 1957); Gum, Inc. v. Gumakers of America, Inc., 136 F.2d 957 (3rd Cir. 1943). Under such circumstances the Court is not persuaded to grant the drastic relief sought by plaintiffs. Societe Comptoir De L'Indus, etc. v. Alexander's Department Stores, 299 F.2d 33 (2nd Cir. 1962); Murray Hill Restaurant, Inc. v. Thirteen Twenty One Locust, Inc., 98 F.2d 578 (3rd Cir. 1938).

## ORDER

AND NOW, this 23rd day of April, 1962, plaintiffs' motion for preliminary injunction is denied.