GARDENIA FLOWERS, INC., Plaintiff,
v.
JOSEPH MARKOVITS, INC., Defendant.
No. 62 Civil 1713.

United States District Court
S. D. New York.
Feb. 26, 1968.

Fink & Pavia, New York City, for plaintiff, Jerome Bauer, Mineola, N. Y., of counsel.

Julian T. Abeles, New York City, for defendant, John S. Clark, Robert C. Osterberg, New York City, of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEVET, District Judge.

Plaintiff, Gardenia Flowers, Inc. ("Gardenia"), alleges infringement of seven copyrighted artificial flower corsages and a claim of unfair competition.

Both liability and damages on the copyright infringement claim were submitted; on the unfair competition claim, liability was tried but any question of resulting damages thereon was reserved.

## THE COMPLAINT

The complaint alleges seven causes of action to the effect that plaintiff is the proprietor of a copyright in a specified "original work of art," to wit, an artificial corsage, and that defendant, Joseph

Markovits, Inc. ("Markovits"), "in infringement of said copyright * * * has made or caused to be made, published and offered for sale copies of the copyrighted work of art," copyrights in suit being dated and identified as follows:

Artificial Single Rose Corsage—Sep. 26, 1961,
 Class G, No. Gp 30585;
Artificial Double Gardenia Corsage—Sep. 26, 1961,
 Class G, No. Gp 30587;
Artificial Single Gardenia Corsage—Sep. 26, 1961,
 Class G, No. Gp 30589;
Artificial Daisy Corsage—Sep. 26, 1961,
 Class G, No. Gp 30795;
Artificial Rosebud Corsage—Sep. 26, 1961,
 Class G, No. Gp 30797;
Artificial Carnation Corsage—Sep. 26, 1961,
 Class G, No. Gp 30798;
Artificial Single Camellia Corsage—Sep. 26, 1961,
 Class G, No. Gp 30588.

———◆———

In an eighth cause of action, it is alleged in substance that Markovits "contacted plaintiff's original manufacturer of each of said works of art and induced such manufacturer to terminate its business relationship with plaintiff in favor of" Markovits; that infringing copies of plaintiff's said "works of art are being made" for Markovits "from the same molds as plaintiff's copyrighted works were originally made," and are being sold by Markovits without plaintiff's copyright notice; that "such activities * * * has [sic] resulted in the confusion of government agencies, thereby preventing their proper application of the law to the benefit and protection of the plaintiff;" that the "infringement of plaintiff's copyrighted works of art" has "caused damage to plaintiff by confusing the trade, detracting from plaintiff's reputation, and loss of sales, thereby constituting acts of unfair competition with plaintiff;" that plaintiff's "copyrighted works of art are well known in the trade as having originated with plaintiff" and that the "copying" by Markovits "results in confusion in the trade and of the public, such that the trade and the public believe and will believe that * * *" the "infringing articles originated with plaintiff,

thus damaging plaintiff and creating a loss of business"; and that Markovits' acts "of copying; and its deliberate attempt to trade upon plaintiff's good will, its reproduction of plaintiff's originally created works of art, are acts of copyright infringement and unfair competition * * *."

Plaintiff bases jurisdiction upon the ground that the Copyright Law of the United States is directly involved in the first seven causes of action and upon the ground that the eighth cause of action asserts a claim of unfair competition as a substantial and related claim under the Copyright Law.

After hearing the testimony of the parties, examining the exhibits, the pleadings and the proposed findings of fact and conclusions of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The court has jurisdiction of the subject matter and of the parties in this action.

2. Plaintiff and defendant are corporations incorporated under the laws of the State of New York, engaged in the

business of importing and distributing artificial flowers.

3. In June 1961, Snyder, president of Gardenia, visited the factory of Italspring, a manufacturer of artificial flowers located in Milan, Italy; examined certain sample corsages previously manufactured by Italspring; furnished Italspring with other samples Snyder had obtained from various sources and requested Italspring to supply him with samples of the artificial corsages later involved in this suit. None of the corsages involved in this suit (Pl. Ex. 3–9) were created by the skill, labor or judgment of Snyder (220, 237–242;[1] Deft. Ex. H, dep. of Termini, pp. 1–4; Pl. Ex. 31).

4. Snyder organized the plaintiff company twenty-two years ago. Before that time he had worked in the artificial flower industry for nineteen years (41, 42).

5. On or about June 20, 1961, plaintiff placed an order with Italspring for various items, among them copies of the artificial corsages involved in this suit, and in a letter dated July 5, 1961, instructed Italspring that every such item ordered by Gardenia should carry a notice of copyright in Gardenia's name, irrespective of the authorship of such items (265–268; Pl. Ex. 30, 31).

6. During Snyder's stay in Milan, Italy in June 1961, and at his request, Italspring agreed to invoice shipments of artificial corsages to plaintiff at 70% of the actual price thereof for the purpose of allowing plaintiff to evade payment of customs duty based on true value (see Deft. Ex. H, dep. of Termini, pp. 4, 5; Pl. Ex. 31, 36, 41; Deft. Ex. F).

7. Plaintiff's president brought samples of the corsages he ordered from Italspring to New York in July 1961. After his arrival, plaintiff packaged these samples in acetate boxes with bows attached (345–347; Pl. Ex. 40).

8. Customers to whom the samples were shown were sold substantial numbers of corsages by plaintiff in July 1961. A sale of 5,000 dozen of the corsages had been consummated by July 5, 1961 (140, 376, 377; Pl. Ex. 31).

9. At the time of this first publication of the corsages, a purported copyright notice appeared on paper tags through which the stems of the corsages were slipped (253, 254, 340, 341, 378; Pl. Proposed Finding of Fact No. 18).

10. On September 26, 1961, plaintiff obtained Certificates of Registration for artificial corsages as follows:

Artificial Single Rose Corsage, Class G, No. Gp 30585 (Pl. Ex. 3);

Artificial Double Gardenia Corsage, Class G, No. Gp 30587 (Pl. Ex. 4);

Artificial Single Gardenia Corsage, Class G, No. Gp 30589 (Pl. Ex. 5);

Artificial Daisy Corsage, Class G, No. Gp 30795 (Pl. Ex. 6);

Artificial Rosebud Corsage, Class G, No. Gp 30797 (Pl. Ex. 7);

Artificial Carnation Corsage, Class G, No. Gp 30798 (Pl. Ex. 8);

Artificial Single Camellia Corsage, Class G, No. Gp 30588 (Pl. Ex. 9).

---

11. In each of the applications for registration of claim to United States copyright in said artificial corsages filed by plaintiff in the Copyright Office, it is stated that plaintiff is the author thereof, that the work, the subject of the claim, was first published on July 7, 1961 in the United States; but said applications do not reveal any previous publication of component parts thereof or the utilization of old matter therein (Pl. Ex. 3–9).

---

[1]. Numbers in parentheses not otherwise identified refer to pages in the stenographer's minutes of the trial.

12. Plaintiff's copyright claim in each of said artificial corsages is confined to the arrangement of the flowers therein, and it does not cover the individual component parts thereof (65, 66).

13. The artificial corsages involved in this case consisted of arrangements of flowers which were common and traditional in the flower industry at the time of plaintiff's claim of copyright. The arrangements in the corsages were old styles, lacking in both creativity and originality, and plaintiff's president had been aware of the existence of such arrangements in natural and cloth corsages prior to the time of its claimed copyrights (86, 87, 227–230, 233–237, 322–344).

14. Italspring ceased doing business with plaintiff in October 1961 because it preferred not to risk the consequences of performing its agreement with plaintiff to invoice shipments of the artificial floral corsages at 70% of the true value thereof (Deft. Ex. H, dep. of Termini, p. 5).

15. Defendant did not order any plastic artificial corsages from Italspring until January 22, 1962, approximately three months after Italspring ceased doing business with plaintiff (392, 395; see Pl. Proposed Finding of Fact 33).

16. Some time prior to May 1962, defendant sold to Woolworth corsages it purchased from Italspring which were similar to those ordered from Italspring by plaintiff. Certain of these corsages were purchased from Woolworth by employees of plaintiff (355–357, 369–375; Pl. Ex. 25–28).

17. Some of the corsages purchased by plaintiff's employees from Woolworth contained defendant's label, and some did not (361, 362, 372, 374).

18. Imprints of plaintiff's name had been scraped from the stems of the corsages purchased by plaintiff's employees, and the prior existence of such imprints is noticeable only upon extremely close examination (Pl. Ex. 25–28).

19. Plaintiff has failed to prove by a fair preponderance of the credible evidence that defendant misrepresented any of the corsages sold to be the goods of plaintiff.

20. The plaintiff has failed to prove by a fair preponderance of the credible evidence that (1) it had any exclusive agreement with Italspring to supply Gardenia with the artificial corsages which are the subject matter of this suit (Pl. Ex. 36, 44; 123–128, 146, 147, 150); or (2) that defendant had any knowledge of any exclusive contract or agreement of Italspring with plaintiff (144, 145, 146, 147, 150, 389); or (3) that defendant induced Italspring to cease to sell to plaintiff (383–390).

21. Plaintiff has failed to prove by a fair preponderance of the credible evidence that defendant committed any acts of unfair competition in respect to the corsages at issue here.

### DISCUSSION

#### A. The Copyright Issue

The issue upon which plaintiff's infringement claims must stand or fall is that of the validity of the copyrights it obtained upon the arrangements of flowers in the artificial corsages. Clearly, there may be infringement of copyrighted works of art by reproduction of the objects themselves. Mura v. Columbia Broadcasting System, Inc., 245 F.Supp. 587 (S.D.N.Y.1965).

Plaintiff introduced its Certificates of Registration of the copyrights relating to the artificial corsages, and under 17 U.S.C. § 209 these are prima facie evidence of the facts stated therein. Initially, therefore, the burden is upon defendant to produce sufficient evidence to overcome this presumption of validity. National Institute, Inc. v. Nutt, 28 F.2d 132 (D.Conn.1928), aff'd, 31 F. 2d 236 (2nd Cir. 1929).

Proof by defendant of facts contrary to those stated in the Certificate of Registration, however, shifts the burden of overcoming such evidence to plaintiff. Hirsch v. Paramount Pictures, Inc., 17 F.Supp. 816 (S.D.Cal.1937); Werner Co. v. Encyclopaedia Britannica

Co., 134 F. 831 (3rd Cir. 1905); see also Snuff v. E. C. Publications, Inc., 342 F. 2d 143 (2nd Cir. 1965), cert. denied, 382 U.S. 822, 86 S.Ct. 50, 15 L.Ed.2d 68 (1965). The burden of proof may be shifted back to a plaintiff even upon those issues over which the Register may have exercised its discretion, for such exercise is subject to judicial review. Bailie v. Fisher, 103 U.S.App.D.C. 331, 258 F.2d 425 (1958). Here defendant offered evidence sufficient to place the burden of proving the validity of his copyrights upon the plaintiff. This burden plaintiff has not met.

With regard to works of art, 37 CFR § 202.10 states:

"(a) * * * This class includes published or unpublished works of artistic craftsmanship, insofar as their form but not their mechanical or utilitarian aspects are concerned, such as artistic jewelry, enamels, glassware, and tapestries, as well as works belonging to the fine arts, such as paintings, drawings and sculpture. * * * [and] (b) In order to be acceptable as a work of art, the work must embody some creative authorship in its delineation or form."

Creative authorship is required as a matter of definition in this class of works subject to copyright; without it there can be no work of art. See Nimmer on Copyright § 19.1 (1964). The requirement of creativeness is separate and distinct from authorship or originality. "Where creativity refers to the nature of the work itself, originality refers to the nature of the author's contribution to the work." Nimmer, supra, § 19.2.

The standard for determining that degree of creativity necessary to constitute a work of art is not high. But though the boundaries may be generous, there are, nevertheless, limits beyond which courts cannot accord objects the status of work of art. See, e. g., Bailie v. Fisher, supra. Plaintiff has conceded that its claims are limited to the *arrangements* of the flowers in the corsages. No claim is made that the component parts thereof are covered.

With respect to the arrangements in question, however, plaintiff's president testified that he did not create anything new. On the contrary, he admitted that before his trip to Italy he had seen flowers arranged with ferns, corsages with a lily of the valley, a carnation bud with gardenias, daisies with ferns in a bouquet, and rosebud corsages with a fern attached. He had seen these arrangements made both with natural and cloth components (227–234). Furthermore, plaintiff's president acknowledged that the rosebud corsages with a fern attached, the rose and bud with lilies of the valley and ferns, the double gardenia with lilies of the valley and ferns, as well as the full-blown camellia and bud with a lily of the valley and fern were all "traditional" flower arrangements for corsages (234–237). There is no evidence of creativity in plaintiff's flower arrangements.

That degree of creativity necessary to define objects as works of art is not supplied through innovations which are solely utilitarian or mechanical. 37 CFR § 202.10(a); Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954). Thus, the fact that plaintiff may have been responsible for adding certain practical features to the component parts of the flower arrangements, which facilitated their assembly and eliminated the need for certain manufacturing operations, does not overcome the absence of creativity inherent in the arrangements. Likewise, plaintiff's decision to use plastic material for fabrication of the articles may have added certain utilitarian advantages, such as durability or color retention over natural or cloth materials, but this, too, does not constitute the creativity required for copyright purposes.

The lack of creativity in the corsages herein involved is fatal to plaintiff's claims regarding the validity of its copyrights and infringements thereof.

Lack of creativity, however, is not the only fault to be found with plaintiff's corsages. They also are lacking in

originality,[2] and it is elementary that no work is entitled to copyright protection unless it is " * * * *original*, in that the author has created it by his own skill, labor, and judgment." Stuff v. La-Budde Feed & Grain Co., 42 F.Supp. 493, 495 (E.D.Wis.1941).

"The 'originality' requirement for copyrightability is not onerous." Peter Pan Fabrics, Inc. v. Acadia Company, 173 F.Supp. 292, 299 (S.D.N.Y. 1956), aff'd, 274 F.2d 487 (2nd Cir. 1960). Indeed, it has been held that: " * * * practically anything novel can be copyrighted. * * * 'No matter how poor artistically the "author's" addition, it is enough if it be his own'. * * *" Dan Kasoff, Inc. v. Novelty Jewelry Co., 309 F.2d 745, 746 (2nd Cir. 1962). Moreover, it has been said that "[o]riginality in this context 'means little more than a prohibition of actual copying.'" Rushton v. Vitale, 218 F.2d 434, 435 (2nd Cir. 1955).

As with the question of creativity, though, the fact that only minimal standards need be applied does not prevent the court from concluding as a matter of fact that works may lack even the modicum of originality required. When the copyright claimant has added nothing of his own to a work, then copyright protection must be denied. See Nimmer, supra, § 19.2.

Much of the same reasoning which led this court to the determination that plaintiff's corsages were devoid of creativity applies with equal force to its claim of originality. Applying the standard in Sieff v. Continental Auto Supply, 39 F.Supp. 683, 688 (D.Minn.1941), that " * * * sameness or similarity is determined by the eye of the ordinary observer," it cannot be said that plaintiff's works represent anything new.

Once more it must be noted that plaintiff's claims relate only to the arrangements of the components of the corsages and not the component parts themselves. These arrangements, which consisted primarily of placing flowers and flower buds upon a background of ferns and leaves, were old traditional styles in the flower industry and they had existed in both natural and cloth corsages well before the time the works at issue appeared in plastic (Finding of Fact 13).

Cases relied upon by plaintiff do not support the premise that its arrangements of flowers in the corsages are sufficiently original to be protected by copyright. Concededly, reproductions of creations of nature such as Balinese dancers, cocker spaniels and even artificial flowers themselves have been given copyright protection where they represented some originality in their treatment of the subject. See Mazer v. Stein, supra; Contemporary Arts, Inc. v. F. W. Woolworth Co., 93 F.Supp. 739 (D.Mass.1950), aff'd, 193 F.2d 162 (1st Cir. 1951); Prestige Floral, Societe Anonyme v. California Artificial Flower Co., 201 F.Supp. 287 (S.D.N.Y.1962). The copyright claims here, however, do not represent creations of nature but merely patterns of arranging floral components for decorative purposes, and plaintiff has shown no originality in the patterns of arrangements it chose. Furthermore, the fact that flower arrangements may have been given copyright protection when incorporated into fabric designs is not relevant, for in such cases the originality required is inherent in the reduction of three dimensional objects to a two dimensional presentation on cloth. See, e. g., Peter Pan Fabrics, Inc. v. Candy Frocks, Inc., 187 F.Supp. 334 (S.D.N.Y.1960).

Plaintiff's argument that requisite originality is demonstrated by slight irregularities of details in the component parts of the flower arrangements, which may be noticed only upon extremely close observation, is also of no avail. The originality of the component parts is not at issue here, but, more important, even

---

**2.** To some extent this deficiency may be more vital then an absence of creativity. The requirement of originality applies universally, while creativity must be given special consideration only for the purposes of Class G works due to its definitional function therein. See Nimmer, supra, §§ 10 and 19.1.

a botanist's inspection which might reveal an unusual vein pattern in some of the leaves or abnormal stem configurations would be irrelevant. Considering, arguendo, that some small details of the component parts of the plastic corsages may be somewhat dissimilar to natural components, still it cannot be said that such variances affect the arrangements of the components or the overall impression made by the complete corsages when viewed by the eye of an ordinary observer. In any event, there was no proof that such minor variations of detail were not present in the artificial cloth corsages which antedated plaintiff's creations.

■■■■ Finally, it must be noted that originality is not proved merely because plaintiff may have had the idea to produce artificial corsages made out of a new plastic material. There can be no copyright on an idea. Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841 (1879); Uneeda Doll Co. v. P & M Doll Co., 353 F.2d 788 (2nd Cir. 1965).

■■■■ "The purpose of the copyright law is to protect creation, not mechanical skill." Shapiro, Bernstein & Co., Inc. v. Miracle Record Co., Inc., 91 F. Supp. 473, 475 (N.D.Ill.1950). Here there is no doubt that the corsages were completely lacking in creativity and originality. The arrangements of components in these corsages are no different from the arrangement of components in artificial and natural corsages which had been common and traditional in the trade for many years before plaintiff's were produced, and plaintiff's president admitted familiarity with such common and traditional arrangements of corsage components during his long experience in the flower business (Findings of Fact 4, 13).

For these reasons, the copyrights claimed by plaintiff upon the corsages herein involved are invalid.

■■■■ In addition to the intrinsic defects in plaintiff's works which render its claimed copyrights invalid, there is a further reason for which copyright protection must be denied. Publication with proper notice of copyright is the essence of compliance with the Copyright Act, and publication without such notice amounts to a dedication to the public sufficient to defeat all subsequent efforts at copyright protection. 17 U.S.C. § 10; Universal Film Mfg. Co. v. Copperman, 212 F. 301 (S.D.N.Y.), aff'd, 218 F. 577 (2nd Cir.), cert. denied, 235 U.S. 704, 35 S.Ct. 209, 59 L.Ed. 433 (1914); Fleischer Studios, Inc. v. Ralph A. Freundlich, Inc., 73 F.2d 276 (2nd Cir. 1934), cert. denied, 294 U.S. 717, 55 S.Ct. 516, 79 L.Ed. 1250 (1935).

■■■■ The first publication of the corsages in question occurred during the early part of July 1961, shortly after plaintiff's president brought samples of the corsages to the United States from Italy. These samples were shown to customers who placed substantial orders with plaintiff for future delivery of the plastic corsages. Indeed, a sizeable customer order was accepted by plaintiff two days before the date of publication which appears on its Certificates of Copyright Registration (Pl. Post Trial Brief, p. 32). Purported copyright notices were on removeable paper tags which were slipped onto the stems of the samples (Finding of Fact 9).

These notices were insufficient to prevent dedication of the corsages to the public, for the law is clear that notices which appear on paper tags attached to articles do not meet the requirement of affixation in 17 U.S.C. § 10. See Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., 144 F.Supp. 577 (S.D.N.Y. 1956); Peter Pan Fabrics, Inc. v. Dixon Textile Corporation, 188 F.Supp. 235 (S.D.N.Y.1960); cf. 37 CFR § 202.2 (b) (9).

In answer to this, plaintiff asserts that its use of paper tags is proof that it "sought to comply" with the provisions of the Copyright Act, and the defect in notice should be excused, presumably by the savings clause in 17 U.S.C. § 21. This statute, however, does not apply when a defect in notice is the result of a mistake of law, Wildman v. New York Times Co., 42 F.Supp. 412, 413 (S.D.N.Y.

1941); and it also fails to excuse defective forms of notice which were deliberately selected and used by the copyright claimant. Advertisers Exchange, Inc. v. Anderson, 144 F.2d 907 (8th Cir. 1944).

Additionally, plaintiff claims that the entire range of activities which took place in July 1961 constituted merely a limited publication that did not divest it of any copyright protections. With this argument I also do not agree.

A limited publication is one which communicates a work " * * * to a definitely selected group and for a limited purpose, without the right of diffusion, reproduction, distribution, or sale * * *." White v. Kimmell, 193 F.2d 744, 746 (9th Cir. 1952). Though plaintiff's customers might be considered a selected group since they must all have been retail flower sellers, it cannot be said that plaintiff's publication of the corsages was for a limited purpose. The customers whose orders were accepted by plaintiff were never subject to any limitations on their rights to distribute or sell the corsages. Obviously, the only purpose for which such customers purchased the corsages was to resell them.

Cases cited by plaintiff relate to the distribution of samples for the purpose of enabling the recipients to place future orders, to distributions for the purpose of record "plugging," or distributions for the purpose of soliciting backers for future theatrical productions. Such authorities are not relevant to the facts of this case, since the customers here had already placed orders with the plaintiff which it had accepted. Furthermore, those of plaintiff's cases which suggest that there can be no general publication unless the author so intends, represent a minority view only. I agree with the prevailing view which holds that an intentional surrender is in no sense necessary to the forfeiture of a copyright. See National Comics Publications v. Fawcett Publications, 191 F.2d 594 (2nd Cir. 1951). Plaintiff's publication of the corsages in the manner described amounted to a dedication to the public.

Thus, for all of the reasons stated, the copyright infringement claims of the plaintiff are dismissed. It is unnecessary at this time to consider defendant's allegations of unclean hands and material omissions in its Certificates of Registration on the part of plaintiff.

### B. Unfair Competition

In connection with its copyright infringement claims, plaintiff has alleged a claim of unfair competition. The gist of this is that the defendant induced Italspring to terminate its business relationship with plaintiff and to sell defendant corsages made from plaintiff's molds—although with defendant's name tag on said corsages. Further, it alleges that defendant sold these to plaintiff's customers so as to lead the customers to believe that the same originated with plaintiff.

Sharing in the goodwill of an unprotected article " * * * is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested." Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 122, 59 S.Ct. 109, 115, 83 L.Ed. 73, rehearing denied, 305 U.S. 674, 59 S.Ct. 246, 247, 53 L.Ed. 437 (1938). "In our freely competitive economy, there is no vested and indefeasible right to monopolize customers." Corica v. Ragen, 140 F.2d 496, 498 (7th Cir. 1944).

The owner of property may sell to whom he chooses. Locker v. American Tobacco Co., 195 N.Y. 565, 88 N.E. 289 (1909); Federal Trade Commission v. Raymond Bros.-Clark Co., 263 U.S. 565, 44 S.Ct. 162, 68 L.Ed. 448 (1924), and in the absence of an exclusive sales contract with plaintiff, Italspring breached no duty by selling to defendant.

The proof as to defendant's alleged inducement to Italspring to terminate its business relationship with plaintiff is insufficient. There is no proof, other than an unsupported statement of plaintiff's president, that Italspring had agreed to sell the corsages to plaintiff exclusively (see Finding of Fact 20), and the fact that defendant placed orders

larger than plaintiff's is immaterial. No liability falls upon defendant just because Italspring, for its own reasons (Findings of Fact 6, 14), ceased to sell corsages to plaintiff. Furthermore, defendant placed no orders with Italspring until three months after Italspring terminated its business relationship with plaintiff (Finding of Fact 15).

The only contracts proved by plaintiff between itself and Italspring were mere orders for the delivery of corsages, and though Italspring's refusal to fill plaintiff's order may give rise to some liability on the part of Italspring, there can be no liability of the defendant herein absent any causal relationship.

 The second part of plaintiff's unfair competition claim alleges that defendant palmed off plaintiff's corsages as its own. Indeed, the essence of the wrong of unfair competition lies in the sale of the goods of one manufacturer or vendor for those of another or under such conditions as may lead the purchaser to think they are the goods of another. Lewis v. Vendome Bags, 108 F.2d 16 (2nd Cir. 1939), cert. denied, 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008 (1940).

 Conceding, however, that under certain circumstances, particularly by reason of prior use, unfair competition may exist without infringement of a copyright, Sally Chain Stores, Inc. v. Sally's Fur Studio, Inc., 40 F.Supp. 445 (E.D.Mich.1941), that condition is not present here. Palming off, or the fair likelihood of it, is not shown by production or sale of plaintiff's uncopyrightable corsages which defendant may be deemed to have caused, since plaintiff had no exclusive right to produce or use them. See Airolite Co. v. Fiedler, 147 F. 2d 496 (2nd Cir.), cert. denied 326 U.S. 726, 66 S.Ct. 32, 90 L.Ed. 431 (1945). Mere copying of plaintiff's corsages does not constitute unfair competition. See Day-Brite Lighting, Inc. v. Sardee Manufacturing Co., 286 F.2d 596 (7th Cir. 1960).

There is no proof whatever that defendant sold any corsages to anyone upon a representation that they were produced by plaintiff, and, in any event, no purchaser would be injured by purchase of defendant's corsages since they were identical to plaintiff's. In addition, when plaintiff's employees purchased defendant's corsages from a Woolworth store they found that all references to "Gardenia Flowers" had been scraped from the corsages (Finding of Fact 18). Such obliteration of plaintiff's name was proper inasmuch as it diminished chances of possible confusion and is some evidence that defendant's corsages were not sold upon misrepresentations that they were plaintiff's products.

Plaintiff has failed to prove its claim of unfair competition, and this cause of action is dismissed.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the subject matter and of the parties herein.

2. The arrangements embodied in the artificial corsages herein involved are copies of old arrangements which were common and traditional in the flower industry and were known to be so by plaintiff at the time it filed applications for the copyright thereof. Plaintiff has failed to meet the burden of proving that such arrangements possessed even a modicum of creativity and originality and, hence, the copyrights of said corsages are invalid.

3. Purported copyright notices on paper tags which were slipped onto the stems of the corsages at the time of their first publication did not meet the requirement of affixation in 17 U.S.C. § 10, and such publication resulted in a dedication of the corsages to the public sufficient to defeat all subsequent efforts at copyright protection.

4. Plaintiff's copyright infringement claims are dismissed.

5. Plaintiff has failed to prove by a fair preponderance of the credible evidence that defendant induced Italspring to terminate its business relationship with plaintiff or that defendant palmed off plaintiff's corsages as its own.

6. Plaintiff's claims of unfair competition are dismissed.

7. Plaintiff's claims were not so lacking in merit as to constitute bad faith and, accordingly, defendant's demand for an award of attorney's fees is hereby denied.

8. Defendant Joseph Markovits, Inc. is entitled to judgment herein dismissing the complaint with costs.

Settle order on notice.