**FLORABELLE FLOWERS, INC.,**
Plaintiff,

v.

**JOSEPH MARKOVITS, INC., Defendant.**
No. 68 Civ. 4998.

United States District Court
S. D. New York.

Dec. 31, 1968.

Ostrolenk, Faber, Gerb & Soffen, New York City, for plaintiff; Sidney Faber, Robert C. Faber, New York City, of counsel.

Abeles & Clark, New York City, for defendant; J. S. Clark, New York City, of counsel.

## MEMORANDUM

FRANKEL, District Judge.

In this action for copyright infringement and unfair competition, the plaintiff has moved by order to show cause for an injunction *pendente lite*. The parties have presented extensive affidavits accompanied by various exhibits, including exemplars of the allegedly copyrighted and allegedly infringing products. These evidentiary materials were supplemented on the return day of the motion by the live testimony of plaintiff's Secretary (and sole stockholder) and of plaintiff's salesman who is asserted to have been the creator of the work in question. Upon the evidence thus adduced and the parties' legal submissions, it has become clear that plaintiff is not entitled to the extraordinary relief it seeks. The findings and conclusions underlying this decision are as follows:

1. The product in question is described in the complaint (par. 5) as "an original sculptured work of art, an artificial flower model known as 'FLOWER IN FLOWER POT.'" This plastic and velour creation consists of a standard shape of flower pot from which rises a stem about 10" in length topped by the "flower." The flower is a demisphere, about 3" in diameter, ringed with petals about 2" in length. Two long-lashed "eyes" and a piece that simulates lips provide a "face" for the flower. The stem also contains, beneath the flower, two leaves and a bow. The ensemble is described in the complaint as being "wholly original with the Plaintiff."

This is one of several respects in which plaintiff's papers are inaccurate or evidently false.

In the original motion papers, plaintiff described the creator of the flower in question as an "employee," not otherwise named or identified. At the hearing on the return day, this reference was explained as designating Mr. Gerald Cohen, who appeared and gave sworn testimony. Mr. Cohen, it developed, is a salesman, working for several interrelated companies, including the plaintiff. Prior to the alleged instance of creativity here in question, he had never engaged in artistic endeavors—at least none of any consequence.[1]

While the complaint alleges that the flower was created in August of 1968, Mr. Cohen's testimony and affidavits submitted on this motion placed the bulk of the creative enterprise in November, 1967, extended perhaps to asserted modifications in March, 1968. In November, 1967, Mr. Cohen testified, he went to Hong Kong, inspirited with a conception which ultimately became the copyrighted work. At the plant of a company called Dong Fung, he discussed his idea with a Mr. Ko and a Mr. Ma (both names phonetically spelled). He and Mr. Ko "played" with possible components. They finally put together an object substantially like the one eventually copyrighted, except that the "face" had differently shaped features and was painted upon the flower's center instead of being made (as it later was) of three raised pieces (for eyes and mouth).

After Mr. Cohen's return from Hong Kong, he went on to testify, work with Dong Fung continued, as reflected in written communications between New York and Hong Kong.[2] Cohen said a model of the product arrived here in January 1968; that he then created the facial revisions in March, and sent them for execution in Hong Kong; and that Dong Fung made the changes at some unspecified time thereafter.

While a full trial may reveal something else again, I find the facts to be significantly different from what plaintiff claims. I find from the evidence before me that Dong Fung itself was producing and shipping substantial quantities of the potted flower in its later copyrighted form before March 1968, when Cohen says he made the improvements. I find that dozens of such products were shipped by Dong Fung to plaintiff in February of 1968, either

---

1. In initial testimony, Mr. Cohen omitted any reference to prior creative experience. After a lunch recess, still on direct, he recalled that he had, prior to his employment by plaintiff, created two artificial flower products for sale in his own business. These were not further described, except to note that they had never been copyrighted. I find this vague postprandial recollection of no serious significance. It leaves intact the solid impression that Mr. Cohen lacks experience, or proclivities, relating to artistic work even of the trivial order here involved. The impression rests not only upon his testimony addressed directly to this subject, but also upon his generally awkward and insensitive handling of questions about the several specimens ("originals" and alleged infringements) upon which he was asked to testify.

There is no requirement, of course, that the creator of a copyrighted work possess any special talent. The accidental or laboriously contrived creation, if it qualifies objectively, is doubtless enough. Cf. Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99, 102–105 (2d Cir. 1951). But the appraisal of Mr. Cohen is a factor in this case because (1) it has influenced my ultimate finding that he is not in any pertinent sense the creator he was alleged to be, and (2) it affects the independently material point that the object in question, a routine assembly of old elements, is probably not copyrightable.

2. The writings in evidence are all between Dong Fung and a company called S. Berger Import & Mfg. Corp., not the plaintiff, Florabelle Flowers, Inc. Although both of these companies are said to be wholly owned by the witness Schur, they are obviously separate entities. No explanation was tendered as to how Florabelle rather than Berger came to be the one which owned the copyright. But this is probably a manageable subject, and it plays no part in the denial of plaintiff's motion.

without copyright notices or without proper notices. It appears, moreover, that other Hong Kong manufacturers were producing and shipping substantially identical objects, not copyrighted, to various of plaintiff's competitors during the Spring of 1968, long before plaintiff sought its copyright and long before the date of creation alleged in the complaint.

In the facts as they now appear, it seems likely that plaintiff will fail at the threshold of its case because the alleged author was not the one whose "own skill, labor, and judgment" produced the work in question. Cf. Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99, 103 (2d Cir. 1951); Gardenia Flowers, Inc. v. Joseph Markovits, Inc., 280 F.Supp. 776, 781–782 (S.D.N.Y.1968); Alva Studios, Inc. v. Winninger, 177 F.Supp. 265, 267 (S.D.N.Y.1959). Without knowing now the exact measure of the respective contributions, I find it most probable that Cohen had a general idea, as merchandisers frequently do, that was not a revolutionary leap from things long familiar in the trade; that he discussed it with the people in Hong Kong; and that the Oriental artisans either had or created, for general sale, the concrete object of art which Cohen (or Florabelle) later sought to copyright.[3]

But this is by no means the sole flaw in plaintiff's case. Even if the truth seems ultimately to approach more nearly the account Cohen gave, there are seemingly fatal obstacles to plaintiff's success in this lawsuit.

2. The evidence shows that plaintiff was offering the disputed flower widely for sale beginning in March of 1968, and surely no later than August 1, 1968. Indeed, after learning belatedly (following the filing of this suit and the present motion) of a sale of two dozen on the latter date alone, plaintiff's counsel was forced to concede that it was probably a "publication" in the pertinent sense. At any rate, that sale does not stand alone. The evidence in our brief record makes it overwhelmingly probable that plaintiff's copyright will ultimately be held invalid (apart from its other defects) because of the general publication which would have dedicated the work to the public even if there had ever been a basis for plaintiff's claim to a right of protected authorship. Gardenia Flowers, Inc. v. Joseph Markovits, Inc., 280 F.Supp. 776, 783–784 (S.D. N.Y.1968); Ross Products, Inc. v. New York Merchandise Co., 233 F.Supp. 260 (S.D.N.Y.1964); Continental Casualty Co. v. Beardsley, 151 F.Supp. 28, 38, 41 (S.D.N.Y.1957), aff'd, 253 F.2d 702, 706 (2d Cir), cert. denied, 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958).

■ Not only was the work widely published before August 1968; it was published without notice—certainly without adequate notice—of any copyright claim by plaintiff. I have found that such publication was effected by plaintiff itself. It was faintly suggested, in evidence and argument, that the more likely culprits were Dong Fung or other Hong Kong manufacturers who "knocked off" the sculpture allegedly created exclusively by Cohen. Even if this were an entirely accurate account of the facts, contrary to what I have found, plaintiff could not prevail on the present motion.

---

3. In a post-hearing letter, plaintiff suggests that "if it should be held that persons in Hong Kong themselves created the work, the work was created at the Plaintiff's instance, and at the Plaintiff's expense, and the work is properly copyrighted by Plaintiff." However, this is not an appropriate case for application of the "Works for hire" doctrine, 17 U.S.C. § 26. The evidence fails to sustain the suggestion that plaintiff "commissioned" the work. There is nothing whatever to indicate that Dong Fung's creative efforts were expended "at the Plaintiff's expense." The only pertinent evidence is to the contrary; it indicates that plaintiff paid Dong Fung nothing except an invoiced price per item for the several dozens it purchased. And there is no faint intimation that plaintiff ever complained to Dong Fung about the latter's apparent willingness to sell the item to all comers. Cf. Brattleboro Publishing Co. v. Winmill Publishing Corp., 369 F.2d 565 (2d Cir. 1966).

A party is not free to present its allegedly unique work to a manufacturer, impose no legal or otherwise effective restraints upon the manufacturer, permit the work to be copied and sold in quantity on the American market (with no, or no adequate, notice of copyright), and then seek to reverse the flood by a grossly tardy registration of the kind here involved. Cf. Stuff v. E. C. Publications, Inc., 342 F.2d 143 (2d Cir.), cert. denied, 382 U.S. 822, 86 S.Ct. 50, 15 L.Ed.2d 68 (1965); Scandia House Enterprises, Inc. v. Dam Things Establishment, 243 F. Supp. 450 (D.D.C.1965); Ross Products, Inc. v. New York Merchandise Co., 233 F. Supp. 260 (S.D.N.Y.1964); Eagle-Freedman-Roedelheim Co. v. Allison Manufacturing Co., 204 F.Supp. 679 (E.D.Pa. 1962).

3. Whoever created it, the flower in issue seems to lack even the "faint trace" of originality required for a copyright. Dan Kasoff, Inc. v. Novelty Jewelry Co., 309 F.2d 745 (2d Cir. 1962); Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99, 103 (2d Cir. 1951). Defendants make an impressive showing, thus far unanswered, that the kind of plastic flower in question, with "face," with or without a pot, and with the few other accoutrements this one displays, are all old and familiar elements of the trade in which both parties are engaged. I am not certain of this, but there is a strong likelihood that plaintiff cannot show more than the aggregation of well known components to comprise an unoriginal whole —the result falling short of the easy standard of originality required for a copyright. Cf. Gardenia Flowers, Inc. v. Joseph Markovits, Inc., 280 F.Supp. 776, 782 (S.D.N.Y.1968); Stevens v. Continental Can Co., 308 F.2d 100, 103–104 (6th Cir. 1962), cert. denied, 374 U.S. 810, 83 S.Ct. 1702, 10 L.Ed.2d 1034 (1963). If there were no obstacles other than this, plaintiff might succeed on the motion herein denied. But this added element of doubt reenforces the view that the case is not one for a preliminary injunction.

 4. The infirmities of plaintiff's copyright claim are fatal to the motion. There is, to be sure, an alleged claim for "unfair competition" based upon the assertion that defendant has used an "advertising sheet" (quaint and obscurantist locution to describe what is, simply, a photograph) with which, the complaint further charges (par. 45), defendant "has sought to mislead its customers and the ultimate customers, and to create the impression that the work of art shown thereon is the product of the Plaintiff, when in fact it is the inferior product of the Defendant." It should suffice to say that the record exposes these assertions as frivolous—without basis either in fact or in law.

The motion for a preliminary injunction is denied. It is so ordered.