In the Matter of GROUP TEN PRESS, INC., a Nebraska corporation, Debtor.

John P. EMARINE, Plaintiff,

v.

GROUP TEN PRESS, INC., a Nebraska corporation; and John E. O'Donnell, an Individual, Defendants.

Bankruptcy No. BK79–1361.

United States Bankruptcy Court, D. Nebraska.

April 17, 1981.

Charles I. Scudder, Omaha, Neb., for plaintiff.

William D. West and Robert W. Green, Omaha, Neb., for defendants.

## MEMORANDUM OPINION

DAVID L. CRAWFORD, Bankruptcy Judge.

This is a controversy over a copyright in a drawing of a skunk. The case was originally filed in District Court, and was subsequently removed to this Court after the defendant, Group Ten Press, filed a Chapter 11 proceeding.

Group Ten Press is a company engaged in the manufacture of greeting cards. In late 1977, it decided that the company logo—a drawing of a skunk—needed refinement. The company president discussed the problem with a teacher at a local commercial art school and said that all Group Ten could afford to pay for a new logo was a $25.00

savings bond or the cash equivalent. The teacher told his students to draw a skunk, and plaintiff's drawing was the winning entry. In January, 1978, plaintiff accepted the cash, and understood at the time that the drawing would be used for letterhead, interoffice memos, order forms, and similar uses. Later that year, another student told plaintiff she had seen his drawing on greeting cards at a store. He went to the store, examined the cards, and ascertained that this was the case. Plaintiff asked the company president about the use of the skunk on greeting cards, but, according to plaintiff's own testimony, the subject of ownership of the drawing never came up. In late spring or early summer of 1978, plaintiff went to work for Group Ten Press. During his employment, plaintiff assisted in refining the skunk drawing, developing a baby skunk based on the first skunk drawing, packaging greeting cards on which the skunk drawing was printed for shipment, and drawing a comic strip featuring the skunk.

Plaintiff states he felt during this entire period that the skunk was his property. However, plaintiff never communicated this belief to anyone at Group Ten Press until relatively late in his employment there, when he put his personal copyright on a comic strip featuring the skunk. When told to remove his name and substitute "Group Ten Press" as the copyright holder, plaintiff did so. Plaintiff left Group Ten Press in November, 1978, registered the skunk as copyrighted by John P. Emarine, and generally began to express his claims to the drawing in unmistakable terms.

The company president testified that he believed Group Ten Press had purchased all rights to the skunk by payment of the cash equivalent of a $25.00 savings bond although there was never a written assignment of those rights by plaintiff. Had he believed otherwise, Group Ten would not have used the drawing. He testified that plaintiff had never said or done anything to challenge this belief until late in 1978, and this testimony is corroborated by plaintiff's own testimony. In addition, the president testified that the use of the drawing on letterhead, invoices, and order forms which plaintiff admits he did authorize, involved the distribution of thousands of copies of the drawing to customers, sales representatives and the like and that none of these copies had a notice of copyright affixed to them.

■ An initial question is which law is applicable. Congress enacted a new Copyright Act, effective January 1, 1978, which preempts all other state and federal copyright law. While I do not believe the resolution of this question alters the disposition of this case, I conclude that the new Act is controlling since the first publication which could give rise to a cause of action occurred after January 1, 1978. 17 U.S.C. § 301(b)(2); *Strout Realty, Inc. v. Country 22 Real Estate Corp.*, 493 F.Supp. 997 (W.D. Mo.1980); *Bromhall v. Rorvik*, 478 F.Supp. 361 (E.D.Pa.1979).

Under the prior law, it was well-established that a general publication of copyrightable materials without registration or notice of copyright affixed to the material would lead to abandonment or forfeiture of the copyright and dedication of the work to the public domain. *White v. Kimmel*, 193 F.2d 744 (9th Cir. 1952). Publication for a limited purpose would not lead to abandonment, provided the owner of the copyright attempted to retain some control over who received copies of the work, and the uses to which the copies were put. *Continental Casualty Co. v. Beardsley*, 253 F.2d 702 (2d Cir. 1958), *cert. denied*, 358 U.S. 816, 58 S.Ct. 25, 3 L.Ed.2d 58 (1958). These principles have been thoroughly discussed by other courts and will not be analyzed in detail here. See, *e. g., Burke v. National Broadcasting Co., Inc.*, 598 F.2d 688 (1st Cir. 1979).

■ As was the case under prior law, the new Act does not mention forfeiture or abandonment of a copyright. However, both are presumably still possible. Otherwise, the registration provisions and the provisions requiring the affixing of a notice of copyright to each copy of a work and providing for correction in cases of omission

of the notice would be meaningless. See 17 U.S.C. §§ 401, 402, 410 through 412. Certainly, authorized publication which violates the requirements of the Act would remove the work from the Act's protection; and, as the Act preempts the field, the work is effectively in the public domain for want of a remedy for wrongful publication. Thus, I conclude that a work which is generally published without notice of copyright affixed to it enters the public domain. Prior case law on the subject remains applicable except where it is inconsistent with the new Act.

■ General publication without consent of the owner of the work will not lead to forfeiture of the owner's copyright. *Ferris v. Frohman*, 223 U.S. 424, 437, 32 S.Ct. 263, 267, 56 L.Ed. 492 (1912). Plaintiff relies on this principle to assert that unauthorized publication of greeting cards bearing his drawing infringed on his copyright. However, I find that the uses which the plaintiff did authorize led to a general publication of the drawing by defendant without notice of copyright and a forfeiture of the copyright. Thus, the skunk is now in the public domain and may be copied by anyone, including plaintiff, except insofar as its use infringes on the defendant's trademark registration.

■ Given this conclusion, it is not necessary to consider defendant's argument that plaintiff is estopped from asserting ownership of the copyright. It is clear that the doctrine of estoppel may be applicable in copyright cases. *Florablelle Flowers, Inc. v. Joseph Markovits, Inc.*, 296 F.Supp. 304, 307 (S.D.N.Y.1968); see also *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960). Were I to rule on this issue, I would find that plaintiff's conduct justifies an application of that doctrine, in that plaintiff made no comment concerning and even assisted in the increasing expansion of the use of the drawing for almost a year before he informed defendants of his claims of ownership.

A separate judgment is entered in accordance with the foregoing.