**Ernest M. IKIRT, Catesby B. Cannon and Joseph J. Smith** on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**LEE NATIONAL CORPORATION**
and
**Provident Life and Accident Insurance Company of Chattanooga, Tennessee, Defendants.**

Civ. A. No. 38174.

United States District Court
E. D. Pennsylvania.

July 8, 1965.

A. John May, Jr., Howard R. Moore, Jr., of Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiffs.

Edwin P. Rome, and Goncer M. Krestal, of Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., for Lee National Corp.

Edward W. Madeira, Jr., Philadelphia, Pa., for Provident Life and Accident Ins. Co. of Chattanooga, Tenn.

JOHN W. LORD, Jr., District Judge.

This proceeding is presently before the Court on the Plaintiffs' motion to enjoin the Defendants Lee National Corporation (hereinafter referred to as Lee) and Provident Life and Accident Insurance Company of Chattanooga, Tennessee (hereinafter referred to as Provident) from discontinuing or otherwise affecting the group life and medical insurance maintained by the said Defendants with respect to the class of retired salaried employees of Lee represented by the Plaintiffs. Pending a final determination of this cause, Plaintiffs pray for a Preliminary Injunction restraining the Defendants from such act or acts.

Upon pleadings and proof and after a full review of the notes of testimony and exhibits taken at a hearing on the within matter, due consideration of all briefs and arguments of counsel, this Court makes the following

## FINDINGS OF FACT

1. Plaintiffs are Ernest M. Ikirt, Catesby B. Cannon and Joseph J. Smith, all residents of Ohio. They are former salaried retired employees of Defendant Lee National Corporation or of its wholly owned subsidiary, Republic Rubber Company.

2. Defendant Lee, formerly Lee Rubber and Tire Corporation, is a corporation incorporated under the laws of the State of New York, maintaining a place of business in the borough of Conshohocken, Montgomery County, Pennsylvania.

3. Defendant Provident is an insurance company with its principal place of business in Chattanooga, Tennessee, but transacting business in Pennsylvania and authorized to issue policies of insurance therein.

4. On or before December 20, 1946, Lee voluntarily instituted a group insurance plan providing life and medical insurance for the benefit of its employees and their dependents.

5. The benefits under this plan were initially insured under policies issued by Connecticut General Life Insurance Company.

6. Under the plan as initially instituted, the premiums charged by the Connecticut General Life Insurance Company for the insurance coverage provided Lee's employees were paid by Lee and the coverage for the dependents was paid by the employees.

7. The group insurance plan was modified and the benefits thereunder

changed from time to time between 1946 and 1959.

8. In 1953 the plan was modified to provide for the entire cost of the insurance coverage under the plan to be paid by Lee.

9. The plan was further modified in 1953 to extend coverage thereunder for the first time to Lee's retired employees.

10. In 1959, the insurance coverage under the plan was transferred from Connecticut General Life Insurance Company to The Travelers' Insurance Company.

11. Booklets describing the benefits under the group insurance plan and the modifications thereto were distributed on several occasions to the employees eligible for coverage under the plan.

12. Letters explaining the benefits under the group insurance plan and the modifications thereto were also distributed on occasion to the employees covered thereby.

13. There was no mention in any of these communications that the insurance coverage under the plan was of indefinite duration or that it could not be modified or terminated by Lee.

14. Ikirt, as General Manager of Lee's Republic Division at Youngstown, Ohio, in writing to six retiring salaried employees of Lee during the period June 27, 1958 through September 26, 1960, advised these employees that their insurance coverage under the plan would be carried "as long as you shall live".

15. In other letters written to retiring salaried employees both before and after the period 1958–1961, Ikirt did not state that the insurance coverage under the plan would be carried "as long as you shall live", or otherwise advise these employees that their rights under the plan could not be terminated by Lee.

16. Ikirt was not authorized either in his capacity as General Manager of Lee's Republic Division or as Treasurer of Lee, to make any statement committing Lee to provide retired salaried employees with group life and medical insurance for as long as such employees should live.

17. Ikirt was not expressly authorized by the stockholders or the Board of Directors or the President of Lee to make any statement committing Lee to provide retired salaried employees with group life and medical insurance for as long as such employees should live.

18. Ikirt was not advised at his own retirement or at any other time that he would be provided with group life and medical insurance for as long as he should live.

19. Ikirt was never advised by any of his superiors at Lee that the group life and medical insurance would be provided for the retired salaried employees of Lee for as long as such employees should live.

20. Arthur H. Nellen (hereafter "Nellen") was a Vice President of Lee in charge of development and a member of Lee's Board of Directors from 1956 until he retired in 1961. He received a letter dated April 12, 1961 from J. J. Conway, Lee's Personnel Manager, advising him that his wife would remain covered under the plan "as long as you live".

21. J. J. Conway was not authorized in his capacity as Lee's Personnel Manager, or otherwise, to make any statement committing Lee to provide retired salaried employees with group life and medical insurance for as long as such employees should live.

22. Nellen was not advised by anyone else having authority to commit Lee to such an obligation that he would be provided with group life and medical insurance for as long as he should live.

23. Nellen was not expressly authorized by the stockholders or the Board of Directors or the President of Lee to make any statement that Lee would continue to provide retired salaried employees with group life and medical insurance for an indefinite period of time.

24. In June, 1963, the insurance coverage under Lee's group insurance plan was transferred from The Travelers' Insurance Company to defendant Provident.

25. In January, 1964, the plan was modified to discontinue any payments by Lee for the medical insurance coverage provided the dependents of the employees covered under the plan

26. In October, 1964, the plan was further amended to reduce certain of the benefits provided thereunder.

27. At no time prior to the commencement of the instant suit did Ikirt or any other retired salaried employee object to Lee of the discontinuance of dependent coverage and reduction of benefits under the plan.

28. By January, 1965, as a result of certain reductions in the number of active employees covered under the plan, there was a heavy imbalance of retired employees included within the group which Provident did not desire to insure, and Provident requested that Lee cancel the coverage being provided under the plan for such retired employees.

29. Provident did not give Lee the alternative of paying a higher premium rate with respect to its retired employees, but insisted that their coverage under the plan be terminated.

30. On May 12, 1965 Lee mailed letters to its retired salaried employees informing them that their life and medical insurance coverage under the plan would be discontinued effective June 1, 1965.

31. There is no assertion in any of the minutes of the meetings of the stockholders and of the Board of Directors of Lee that the benefits provided under Lee's group insurance plan were permanent and could not be terminated.

32. Life and medical insurance is available to plaintiffs and the other retired salaried employees of Lee during the pendency of this action at a cost which can be determined from premium rates which have been, or can be, established by Provident.

33. The life and medical insurance benefits provided under Lee's group insurance plan for retired salaried employees are clearly set forth in the policies issued by Provident and the announcements made to the employees from time to time.

34. The monetary damages which may be sustained by Plaintiffs and the other retired salaried employees of Lee as a result of the cancellation of Lee's group insurance plan can easily be computed in the event that Lee did not have the right to terminate these benefits.

35. The medical insurance policy issued by Provident insuring the benefits under Lee's group insurance plan provides that Provident cannot change the premium rates being charged under the policy "more than once during any period of twelve consecutive months".

36. The premium rates being charged by Provident under the said policy were last revised in October, 1964.

37. As of June 1, 1963, Provident entered into certain policies of group life and group hospitalization insurance with Lee covering certain categories of employees of that corporation and certain related companies.

38. As of October 1, 1964, by the mutual agreement of Lee and Provident, certain changes were made as to the coverage under these policies. These changes were made both as to benefits to be received under the policies and premiums due thereunder.

39. After the changes in benefits and rates were announced, a substantial category of active employees of Lee, paying their own premiums through Lee management, decided through their union that they no longer wished coverage under Provident's policies.

40. The elimination of this category of active employees created an imbalance and made the continuing coverage of the remaining categories of employees actuarially unsound on the basis of the premiums quoted by Provident and effective October 1, 1964.

41. Since October 1, 1964, there has been a heavy imbalance in the group covered by the policies of insurance in that there is presently a very high ratio of retired employees to active employees.

42. As a result of such heavy imbalance, Provident has sustained losses under the policies. The premiums presently being charged by Provident for coverage including the retired employees is actuarially unsound. Substantial increases would be necessary to place them on an actuarially sound basis.

43. Provident cannot unilaterally terminate the policies or raise the premiums thereto prior to October 1, 1965 in the absence of a modification to the terms and conditions of the policy.

44. In January, 1965, Provident, through its local representative, N. W. Rauchut, contacted Lee and advised it of the imbalance in the group. Provident suggested as a remedy either higher premiums for the retired group, additional active employees to be included within the group, or a modification of the policy so as to terminate coverage for both retired salary and retired hourly employees. As a result of discussions between Provident and Lee, it was agreed that coverage for both retired salary and retired hourly employees would be terminated effective June 1, 1965.

## DISCUSSION

 It is a well-established principle of law that the party praying for injunctive relief must demonstrate a reasonable probability of success upon final hearing. Eagle-Freedman-Roedelheim Co. v. Allison Mfg. Co., 204 F.Supp. 679 (E.D.Pa.1962); North Carolina Natural Gas Corp. v. United States, 200 F.Supp. 740, 743 (D.Del.1961). Our review has not led us to such assurance of the Plaintiffs' success.

██ Further, this Court cannot find as a fact that Plaintiffs have met their burden of showing irreparable injury such as would justify the granting of a preliminary injunction. Murray Hill Restaurant, Inc. v. Thirteen Twenty One Locust, 98 F.2d 578 (3rd Cir. 1938).

 In its consideration the Court is not unmindful of the need to balance the competing equities. Pennsylvania Motor Truck Ass'n. v. Port of Phila. M. T. Ass'n., 183 F.Supp. 910, 918 (E.D.Pa. 1960). However, it is axiomatic that great caution is to be exercised in meting out the drastic relief of a preliminary injunction. *ibid.* Under all the circumstances herein existing, the Court has not felt persuaded to do so. Accordingly, the Court makes the following

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties to and the subject matter of this action.

2. The determination of Plaintiffs' right to the preliminary relief requested herein depends upon an interpretation of the policies issued by the various insurance companies insuring Lee's group insurance plan, the booklets distributed to the employees explaining the plan and other documents, as well as a determination of the intent of the officers and Board of Directors adopting and ratifying the plan, all of which are in serious dispute herein.

3. Plaintiffs have failed to show that there is a reasonable likelihood that they will prevail upon final hearing on the merits herein.

4. Plaintiffs have failed to show a clear right to the extraordinary relief requested herein.

5. Plaintiffs have failed to show that they will be irreparably harmed if the preliminary injunction requested herein is not granted pending a final hearing on the merits herein.

6. Plaintiffs are not entitled to a preliminary injunction, as prayed for, preventing Lee and Provident from discontinuing or otherwise affecting the life and medical insurance coverage provided Plaintiffs under Lee's group insurance plan, pending a final hearing on the merits herein.

In accordance with the above Findings of Fact and Conclusions of Law and for the foregoing reasons, it is the ruling of this Court that Plaintiffs' Motion for Preliminary Injunction be and the same is hereby denied, and it is so ordered.