Russell P. MILLER and Margaret Jane Miller, h/w

v.

AMERICAN TELEPHONE & TELEGRAPH CORPORATION et al.

Civ. A. No. 72–798.

United States District Court, E. D. Pennsylvania.

June 29, 1972.

As Amended Aug. 24, 1972.

John C. Butera, Norristown, Pa., for plaintiffs.

Philip M. Hammett, Philadelphia, Pa., for defendants.

## FINDINGS OF FACT, DISCUSSION, AND CONCLUSIONS OF LAW

BECHTLE, District Judge.

This matter is before the Court on a Motion for a Preliminary Injunction. Plaintiffs seek to restrain defendant, American Telephone & Telegraph (hereinafter referred to as "AT&T"), its employees, workmen, and attorneys, and all persons in active concert and participation with it, from providing telephone service to the Democratic National Committee (hereinafter referred to as "Committee"), its officers, agents, servants, workmen, or attorneys, and all persons in active concert and participation with them, until an antecedent debt, originating from the 1968 Democratic Presidential Campaign, in the sum of One Million Four Hundred Seventy-Seven Thousand Six Hundred Thirty-Eight Dollars ($1,477,638.00) due and owing AT&T, is paid in full by the Committee.

## FINDINGS OF FACT

1. Plaintiffs, Russell P. Miller, and his wife, Margaret Jane Miller, are resi-

dents of the Commonwealth of Pennsylvania, and reside in Monroeville, Allegheny and Westmoreland Counties, Pennsylvania.

2. Plaintiffs are owners of two hundred (200) shares of AT&T common stock registered in their names as joint tenants, having purchased one hundred (100) shares on April 26th, 1966, and an additional one hundred (100) shares on January 31st, 1968.

3. Defendant, AT&T, is a New York corporation with its principal place of business and executive offices at 195 Broadway, New York, New York.

4. Plaintiffs invoke the jurisdiction of this Court under 28 United States Code, § 1332(a) (1).

5. Plaintiffs' original Complaint was filed on April 27th, 1972, naming AT&T and certain of its directors, and others, individually, as defendants.

6. Plaintiffs filed a Motion for a Preliminary Injunction against AT&T on May 18th, 1972.

7. Plaintiffs filed an Amended Complaint on May 31st, 1972, naming AT&T and all of its directors, except one director who is a resident of Pennsylvania. This director was not named by the plaintiffs in order that the jurisdiction of the Court, based upon diversity of citizenship, not be defeated.

8. Plaintiffs refiled their Motion for a Preliminary Injunction on May 31st, 1972, in conjunction with the filing of the Amended Complaint.

9. AT&T's attorney of record has accepted service and voluntarily appeared on behalf of AT&T to answer plaintiffs' Motion for a Preliminary Injunction.

10. In 1968, the Committee became indebted to AT&T in the sum of One Million Four Hundred Seventy–Seven Thousand Six Hundred Thirty-Eight Dollars ($1,477,638.00), as a result of AT&T furnishing to the Committee, and its authorized designees, telephone and communication services throughout the 1968 Democratic National Convention in Chicago, Illinois, and subsequent 1968 Presidential Campaign.

11. No portion of the Committee's debt to AT&T for the services furnished for the 1968 activities has been thus far paid.

12. Officials of AT&T and officials of the Committee have recently exchanged letters discussing the 1968 indebtedness. These letters include a full acknowledgment by the Committee that the aforementioned debt is due and owing to AT&T. The letters also include an intent on behalf of the Committee to raise the funds through a telethon or some other means of fund raising to pay off the debt.

13. The correspondence thus far, however, has not resulted in a precise schedule of payment, security for the indebtedness, or the threat of instituting any legal proceedings by AT&T to bring about the satisfaction of the indebtedness.

14. The Committee, by its Treasurer, has sent a letter purporting to waive the Statute of Limitations that might otherwise bar AT&T from succeeding in legal proceedings that AT&T may initiate in the future to recover the 1968 debt.

15. At or about the time the original Complaint was filed by the plaintiffs, AT&T entered into arrangements to furnish telephone service to the Committee for the 1972 Presidential Campaign, which will include service throughout the Democratic National Convention, scheduled to commence on July 10th, 1972, and throughout the subsequent campaign.

16. The total service to be rendered by AT&T consists of engineering, installation, monthly billing charges, and toll charges.

17. AT&T, by its customary method of rate calculation and cost analysis, has concluded that the billable sums necessary to fully satisfy that portion of the service to be furnished for engineering, installation, and monthly service charges, is the approximate sum of Eighty Thousand Dollars ($80,000.00).

18. The Committee has paid to AT&T the sum of Eighty Thousand Dol-

lars ($80,000.00) for that portion of the service consisting of engineering, installation, and monthly service charges.

19. That portion of the service, to be rendered by AT&T to the Committee, consisting of toll charges, is incapable of determination until the telephone service is put to actual use by the Committee.

20. Any portion of the total service to be rendered by AT&T, for which no payment has been made, shall not be provided to the Committee until the Committee has made such payment in advance, in the form of a security deposit.

21. It is within the province of the officers of AT&T to make judgments concerning how to collect debts owed to the corporation; and when to cut off service to a recalcitrant customer.

22. The officers of AT&T responsible for the collection and approval of conditions respecting indebtedness due AT&T by its customers, such as the Committee, have considered the present representations and efforts of the Committee to satisfy the 1968 indebtedness, the history of the customer, the likelihood of future fund raising successes of the Committee, and other similar criteria, and have concluded that the ultimate expectancy of payment of the 1968 indebtedness is fully justified and in keeping with standard acceptable AT&T business policy.

23. A national political convention is a matter of public interest and concern.

24. On June 15th, 1972, a hearing was held on the Motion for a Preliminary Injunction.

## DISCUSSION

At the outset of this hearing, the defendant, AT&T, made several Motions to dismiss the Amended Complaint and to deny the plaintiffs' Motion for a Preliminary Injunction as a matter of law.

Due to the nature of the circumstances surrounding this action,[1] the Court deemed an expedient determination essential, and, therefore, denied all of the defendant's Motions without prejudice and with leave to the defendant to renew them at a later time, if necessary.

An essential prerequisite to the granting of a Preliminary Injunction is the showing by the plaintiffs that they will suffer irreparable injury if the Preliminary Injunction is denied. Kontes Glass Company v. Lab Glass, Inc., 373 F.2d 319 (3rd Cir. 1967); Instant Delivery Corp. v. City Stores Company (Lit Brothers Division), 284 F.Supp. 941 (E.D.Pa.1968). In this case, the plaintiffs failed to meet this burden.

### Irreparable Injury

The plaintiffs' evidence consisted of two witnesses and several documents stipulated by the parties to be admissible as exhibits in this proceeding. The first witness, plaintiff Russell P. Miller, testified that he was a stockholder in AT&T, and that his personal knowledge of the matters alleged in the Complaint came from reading an article in "The Wall Street Journal." He was concerned about the fact that, with the Committee already in debt to AT&T in an amount of approximately One Million Five Hundred Thousand Dollars ($1,500,000.00), AT&T was about to render further service without first collecting this debt. Based on this concern, Mr. Miller consulted with his attorneys, and thereafter a stockholders' derivative suit was instituted, out of which this Motion for a Preliminary Injunction arose.

Plaintiffs' second witness was P. D. Loser, Assistant Vice-President of AT&T in charge of the Commercial Division of the Operations Department. Plaintiffs called Loser as under cross-examination. Loser testified that he was

<hr/>

1. The Democratic National Convention is scheduled to commence July 10, 1972. At the time of the hearing on this Motion for a Preliminary Injunction, arrangements between AT&T and the Committee for telephone service at the Convention had already been concluded. A certain portion of the service sought to be restrained by the plaintiffs was already in the process of being supplied. (That portion dealing with the engineering and installation of the phones.)

one of the officers of AT&T authorized to review the debt situation of the Committee, as well as other customers of AT&T similarly situated. He testified further that in deciding whether to suspend service of a delinquent customer (particularly a business customer as opposed to an individual), one of the main factors to consider is whether the earning ability of the customer will be substantially impaired as a result of the suspension of service. Many businesses and other customers depend on the telephone as an integral part of their trade. AT&T reasons that without the telephone the earnings of the customers will diminish, and, therefore, the possibility of the customers ever being able to satisfy the indebtedness owed to AT&T is considerably lessened. Loser stated that the 1968 debt of some One Million Five Hundred Thousand Dollars ($1,500,000.-00) had been discussed recently with the Committee and that the Committee promised to pay the debt soon from funds raised through a telethon and other fund raising techniques.

With regard to the telephone service to be rendered throughout the 1972 Convention and subsequent campaign, AT&T is requiring payment in advance for all service to be rendered. In a letter to the Comptroller of the Democratic National Convention, AT&T stated this requirement as follows:

"A. We will request a deposit in the amount of two months billing (local service and estimated tolls) for the permanent service due to be put in the latter part of this month. This deposit will be held through the life of the service and then either refunded or applied to any outstanding bills. If, after the service goes in, the amount of usage increases beyond what is covered by our two month deposit, we will ask that it be increased. In reality, you will almost always have a two month outstanding bill since we bill one month in advance. So, we are really only asking to be covered for what will be outstanding.

"B. We will request advance payment for the main service to be supplied during the Convention. This advance payment will be asked for in two stages.

"Payment #1—To be paid at the time firm orders are received for service and in an amount sufficient to cover Administrative, Developmental and Engineering costs. This figure will be developed by us and agreed to by you before we ask for payment. Normally, it would run about 20% of the total bill. Probably early in February.

"Payment #2—To be paid at the time we actually start physical installation work. The amount will be the remaining associated billing for all service plus an amount equal to forecasted long distance usage during the Convention."

By return letter, the Committee agreed to the advance payment requirement and the schedule of payments as set out above.

Under this schedule, a payment of Eighty Thousand Dollars ($80,000.00) has already been made by the Committee to AT&T, representing the approximate cost (calculated by AT&T) of engineering, installation, and monthly service charges.

The plaintiffs offered no other testimony or evidence that contradicted the testimony of Loser.

■ This Court fails to see how the plaintiffs will be irreparably injured if AT&T is not restrained from rendering further service to the Committee. Under these facts, the service sought to be restrained is fully secured, and the outstanding debt owed AT&T cannot increase.

■ Plaintiffs argue that if the defendant is not made to collect the debt

before the Convention, they will lose any leverage over the Committee to force payment of the debt. Even if this loss of leverage can be considered an injury, it cannot be considered irreparable for two reasons. First, there can be no irreparable injury if the plaintiff has an adequate remedy at law. Instant Delivery Corp. v. City Stores Company (Lit Brothers Division), 284 F.Supp. 941 (E.D.Pa.1968). The plaintiffs, as shareholders, can pursue their objectives through the corporate framework in the hope that they can persuade the directors and officers of AT&T to institute legal steps to bring about payment of this debt. If such efforts to induce a collection suit fail and losses result, the plaintiffs may be able to prove that there was an actionable breach of duty by AT&T officials to which they and the corporation are entitled to damages measured by that loss. This remedy is clearly an adequate one.

Secondly, where a possible injury can be measured by a specific number of dollars and consequently has a dollar value, it cannot be said to be irreparable. McKesson & Robbins, Inc. v. Charles Pfizer & Company, 235 F.Supp. 743 (E.D.Pa.1964). The possible injury to the plaintiffs here, if this debt remains uncollected or becomes uncollectible, is one measurable in dollars.

Further prerequisites to the granting of a Motion for a Preliminary Injunction are that the plaintiff show a substantial likelihood of success on the merits of his original claim, and that the equities weigh in favor of the plaintiff. Ikirt v. Lee National Corporation, 243 F.Supp. 1001 (E.D.Pa.1965).

### Substantial Liklihood of Success

There can be no substantial likelihood of success, if there are complex issues of law and fact, resolution of which is not free from doubt. "To doubt is to deny." Graham v. Triangle Publications, Inc., 233 F.Supp. 825 (E. D.Pa.1964); Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3rd Cir. 1937).

The plaintiffs' claim is predicated on the failure of AT&T to take affirmative action in bringing about collection of the outstanding debt. In essence, the plaintiffs are asking the Court to force AT&T to act, where it has chosen not to.

Decisions concerning when and how to apply pressure to a recalcitrant debtor are within the province of the business judgment of the officers of the corporation. By extending service to the Committee, despite the outstanding debt, the officers of AT&T have exercised their business judgment. A Court may not substitute its own judgment for that of a corporate judgment, absent a showing that the officers or directors have acted unreasonably or breached their fiduciary duty. This is known as the sound business judgment rule. Ash v. International Business Machine, Inc., 236 F.Supp. 218 (E.D.Pa. 1964). A frequently quoted statement of the business judgment doctrine is that of Mr. Justice Brandeis, concurring in Ashwander v. T.V.A., 297 U.S. 288, 343, 56 S.Ct. 466, 481, 80 L.Ed. 688 (1936):

> "[Stockholders] cannot secure the aid of a Court to correct what appear to them to be mistakes of judgment on the part of the officers. . . .
>
> This rule applies whether the mistake is due to error of fact or of law, or merely to bad business judgment. It applies . . . where the mistake alleged is the refusal to assert a seemingly clear cause of action. . . ."

Whether the officers of AT&T acted unreasonably, breached a fiduciary duty, or even made a mistake of judgment, is by no means free from doubt; therefore, we are compelled to deny the Motion on these grounds also.

### Balancing of Equities

In Liberty Lobby, Inc. v. Pearson, 129 U.S.App.D.C. 74, 390 F.2d 489, 490 (1968), now Chief Justice Burger, stated:

> "In exercising the discretion to grant or withhold a preliminary injunction,

the District Judge must consider the petitioner's prospect of success on the merits and weigh the interests of the parties and the public."

A national political convention is a matter of public interest and concern. The suspension of telephone service to the Committee would most surely bring about a disruption of unknown proportions to the present plans of that Committee to conduct is national 1972 convention in Miami within the next three weeks. The effect upon the political processes of this country of such disruption are difficult, if not impossible, to calculate, although a likely result would be a substantial adverse impact upon the ability of one of this country's principal political parties to field a slate of candidates to run for election to our nation's highest office of President and Vice-President. Were we to grant this Motion, at this time, the possible disruption to the convention, hence the public interest, would be great. This certainly would outweigh the possible monetary damage to the plaintiffs, if the Motion is not granted. The plaintiffs' Motion for a Preliminary Injunction, therefore, is also denied on these grounds.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter for the purposes of hearing this Motion for a Preliminary Injunction.

3. Plaintiffs have not established their burden of showing that they will suffer irreparable injury if this Motion is not granted.

4. Plaintiffs have an adequate remedy at law for any possible injury to them.

5. Where a dollar value can be placed on a possible injury, it is not irreparable.

6. Plaintiffs have failed to establish their burden of showing a substantial likelihood of success on the merits of their original claim.

7. The Court will not substitute its judgment for that of a corporate judgment, absent showing of an unreasonable act or a breach of fiduciary duty on the part of the officers or directors of that corporation.

8. Plaintiffs have failed to establish their burden of showing that the equities of all the interests involved weigh in favor of them.

9. The public interest involved here outweighs that of the plaintiffs.

10. Plaintiffs are not entitled to the issuance of a Preliminary Injunction.